UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| BRIAN A. WEIL *and*<br>MELISSA D. FULK, *individually and on*<br>*behalf of others similarly situated,* | )<br>)<br>) | |
| | ) | |
| Plaintiffs, | ) | No. 2:15-cv-00016-JMS-DKL |
| | ) | |
| vs. | ) | |
| | ) | |
| METAL TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiffs Brian A. Weil and Melissa D. Fulk filed a Complaint asserting claims against Defendant Metal Technologies, Inc. ("Metal Technologies") for failure to pay wages pursuant to the Fair Labor Standards Act, ("FLSA"), and the Indiana Wage Payment Act, ("IWPA"). [Filing No. 1.] Presently pending before the Court are Plaintiffs' Motion to Certify a Combined Class Action and FLSA Collective Action, [Filing No. 53], and Metal Technologies' Motion for Leave to File Surreply to Plaintiffs' Motion to Certify a Combined Class Action and FLSA Collective Action, [Filing No. 75].  For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Certify a Combined Class Action and **DENIES** Metal Technologies' Motion to Leave to File Surreply.

## I.
### FACTUAL BACKGROUND

Metal Technologies is a manufacturing facility located in Bloomfield, Indiana, that manufactures automobile parts for car manufacturers like General Motors, Chrysler, Hyundai, and Honda.  [Filing No. 63-1 at 4; Filing No. 66 at 4.]  From January 2012 up until the time of this

lawsuit, it employed approximately 500 to 550 employees. [Filing No. 54-3 at 11.]  The employees work one of three shifts: the first shift begins at 7:30 a.m. and ends at 3:30 p.m., the second shift begins at 3:00 p.m. and ends at 11:30 p.m., and the third shift begins at 11:00 p.m. and ends at 7:30 a.m.  [Filing No. 63-1 at 7.]  Employees are scheduled to work eight hour shifts and when working Monday through Friday, they are instructed to take thirty minute lunch breaks.  [Filing No. 63-1 at 6; Filing No. 63-1 at 8.]

Metal Technologies uses an electronic time clock to record the time that each employee clocks in and out, and employees track their time by swiping a personal security badge.  [Filing No. 66 at 4.]  Metal Technologies also requires its employees to clock out at the beginning of a meal period and clock back in at the end of a meal period.  [Filing No. 66 at 4.]  Employees can voluntarily authorize Metal Technologies to deduct wages on a weekly basis to pay for half of the cost of renting work uniforms.  [Filing No. 63-1 at 20.]  Approximately forty to fifty percent of the employees at Metal Technologies have enrolled in the uniform program.  [Filing No. 63-1 at 31.]

Plaintiffs assert three types of conduct by Metal Technologies as the basis of their lawsuit and the instant motion.  As described further below, they argue that Metal Technologies 1) rounded employees' payroll records to pay them for their scheduled hours of work rather than actual hours of work; 2) deducted wages from employees' paychecks to pay for work uniforms; 3) and treated employees' lunch breaks of twenty minutes or less as unpaid time.  [Filing No. 54 at 1-2.] Plaintiffs assert that these practices violate federal and state law.

## A.  Rounding Practices

### 1.  Plaintiffs' Allegations

Plaintiffs claim that Metal Technologies improperly rounds the employees' starting and ending times to pay them for their scheduled hours of work rather than the actual hours they worked.  They claim that this practice contradicts Metal Technologies' written policies in its Employee Handbook which states: "Your time punch is the only way the payroll department knows how many hours you worked and how much to pay you."  [Filing No. 54 at 3; Filing No. 54-11 at 7.]  The Employee Handbook also states that Metal Technologies uses a disciplinary policy for attendance, tardiness, and leaving work early through the use of a point system.  [Filing No. 54 at 3-4; Filing No. 54-11 at 4.]  If an employee performs overtime work, per the Employee Handbook, the Plant Manager must approve all overtime in advance.  [Filing No. 54 at 4; Filing No. 54-11 at 6.]

Plaintiffs deposed the manager of Metal Technologies' Payroll Department and Human Resources Department, Kirbie Conrad, and they claim that she admits that Metal Technologies has a consistent policy of rounding the employees' starting and ending times to pay them for their scheduled hours of work rather than the actual hours of work.  [Filing No. 54 at 5; Filing No. 54-3 at 15; Filing No. 54-3 at 28-29; Filing No. 54-3 at 31.]  Ms. Conrad also testified that an employee is disciplined if he or she clocks in but fails to start work or stops working and does not clock out.  [Filing No. 54 at 10; Filing No. 54-3 at 47.]  In both circumstances, however, Ms. Conrad admitted that she has no recollection of anyone being disciplined.  [Filing No. 54 at 10; Filing No. 54-3 at 47.]  To illustrate Metal Technologies' rounding practices, Plaintiffs reviewed a sample of payroll records from twenty employees, and they summarized the following:

**Rates of Pay**. The average rate of pay is $12.89 per hour. Rates of pay ranged from a low of $10.00 per hour to a high of $19.25 per hour. The average overtime rate of pay is $19.33 per hour.

\* \* \*

**Non-Neutral Time Card Rounding**. From the pay roll records of the representative sampling of twenty (20) employees, it is very clear that Metal Technologies was rounding down and not paying an average 4.85 hours of work time per employee per month.

[Filing No. 54 at 9; Filing No. 54-4 at 5-6.]

*2. Metal Technologies' Response*

Metal Technologies agrees that employees are paid based on their scheduled hours of work and not paid according to times recorded on the time clock system. [Filing No. 63 at 4; Filing No. 63-1 at 5-6; Filing No. 63-1 at 8; Filing No. 63-1 at 12-13; Filing No. 63-1 at 16.] Metal Technologies alleges that employees get paid for eight "working" hours per day, and that if they work over eight hours, they are required to complete an Overtime Authorization form to be compensated for that time. [Filing No. 63 at 5; Filing No. 63-1 at 8-9.] Additionally, Metal Technologies alleges that its employees are allowed to clock in fifteen minutes before beginning work and prior to their scheduled shift. [Filing No. 63 at 5; Filing No. 63-1 at 10.] It claims that employees often attend start-of-the-shift meetings at the beginning of their scheduled shifts. [Filing No. 63 at 5; Filing No. 63-4 at 7-8; Filing No. 63-5 at 8.] Metal Technologies asserts that if employees work over forty hours on a given week, they get paid the overtime rate of time and a half. [Filing No. 63 at 5-6.]

**B. Work Uniforms**

*1. Plaintiffs' Allegations*

Plaintiffs allege that Metal Technologies makes a deduction from its employees' wages to cover the costs of work uniforms. [Filing No. 54 at 7; Filing No. 54-3 at 4; Filing No. 54-10.]

4

Participation in the uniform plan is voluntary.  [Filing No. 63-1 at 17-18; Filing No. 63-1 at 20-21.]  A Premiums and Deductions form is completed by the employee to authorize uniform deductions.  [Filing No. 54 at 7; Filing No. 54-3 at 56-57; Filing No. 54-10.]  It does not contain a signature line for a representative of the employer and does not contain language that the uniform deduction may be revoked by the employee at any time upon written notice to the employer. [Filing No. 54 at 7; Filing No. 54-3 at 56-57; Filing No. 54-10.]  The uniform deductions appear in the employees' pay stubs as "DW" (deduction withholding).  [Filing No. 54 at 7; Filing No. 54-3 at 56-57; Filing No. 54-10.]  Plaintiffs summarized the following findings from the sample of payroll records from twenty employees:

> **Uniform Deductions**. . . . [A] total of $50.96 was deducted each week from their combined wages for uniform deductions. Based upon the presumption that the average deduction per employee - $2.55 per week - is representative, the damages will be substantial. Metal Technologies has estimated that it had 300 employees at the time of [Ms.] Fulk and [Mr.] Weil's employment. At $2.55 per week per employee, Metal Technologies was deducting an aggregate $765.00 per week from employees.

[Filing No. 54 at 9; Filing No. 54-4 at 5.]

### 2. Metal Technologies' Response

Metal Technologies admits that it allows employees to rent clothes to wear during the work day.  [Filing No. 63 at 5; Filing No. 63-1 at 17-18; Filing No. 63-1 at 20-21.]  Metal Technologies claims that this service is completely voluntary, and employees can wear their own clothes if they prefer.  [Filing No. 63 at 5; Filing No. 63-1 at 20.]  If they decide to participate in the uniform program, employees complete a Premiums and Deductions form authorizing Metal Technologies to take a deduction from their weekly paycheck.  [Filing No. 63 at 5; Filing No. 63-1 at 19.]  Metal Technologies pays half of the rental fee, while the employee pays the other half.  [Filing No. 63 at 15; Filing No. 63-1 at 20.]

### C.  Lunch Breaks

#### 1.  *Plaintiffs' Allegations*

Plaintiffs allege that Metal Technologies treats employees' lunch breaks of twenty minutes or less as unpaid, thirty minute lunch breaks.  Metal Technologies has a written policy that requires employees to clock in and out for lunch.  [Filing No. 54 at 6; Filing No. 54-11 at 7.]  Ms. Conrad testified that she personally reviewed time records, and she confirmed that on occasion, employees' lunch breaks of twenty minutes or less were treated as unpaid, thirty minute lunch breaks.  [Filing No. 54 at 6; Filing No. 54-3 at 49-55.]  Plaintiffs' review of the sample of records from the twenty employees demonstrate the following:

> **Lunches of Twenty Minutes or Less Treated as Unpaid Time by Metal Technologies**. . . . [T]ime records produced by Metal Technologies show on their face the fact that Metal Technologies treated "lunch" breaks as unpaid time, even when those . . . were twenty (20) minutes or less. . . . The violations are shown on the records Metal Technologies produced. Based upon the representative sampling of twenty (20) employees Metal Technologies provided (using August 2014 time records), an aggregate total of 39.92 hours of breaks of twenty (20) minutes or less were improperly treated as unpaid time by Metal Technologies. This means 1.996 hours per employee per month should have been paid work time.

[Filing No. 54 at 9; Filing No. 54-4 at 6-7.]

#### 2.  *Metal Technologies' Response*

Metal Technologies admits that employees are paid based on their scheduled shift times, and their thirty minute lunch breaks are automatically deducted.  [Filing No. 63 at 4; Filing No. 63-1 at 8.]

### D.  Class Representatives

#### 1.  *Brian A. Weil*

Plaintiffs seek to have Mr. Weil serve as class representative for the collective action brought under the FLSA for all three of the alleged violations, [Filing No. 66 at 10], and for the

class action brought under a state law breach of contract theory, for any employee who was involuntarily terminated [Filing No. 66 at 11]. Mr. Weil was a full time employee at Metal Technologies from November 2014 until December 2014, when he was involuntarily terminated. [Filing No. 54-9 at 1.]

### 2. Melissa D. Fulk

Plaintiffs allege that Ms. Fulk will also serve as a class representative for the collective action brought under the FLSA, [Filing No. 66 at 10], and for the class action brought under the IWPA, [Filing No. 66 at 10-11]. Ms. Fulk was a full time employee at Metal Technologies from early August 2014 until she voluntarily resigned either late December 2014 or early January 2015. [Filing No. 54-6 at 1.]

## II.
### DISCUSSION

**A.  Motion for Leave to File Surreply**

Metal Technologies filed a Motion for Leave to File Surreply to respond to Plaintiffs' arguments. Metal Technologies claims that for the first time in their reply brief, Plaintiffs raised arguments related to records from thirty employees that they did not raise in their supporting brief. [Filing No. 75 at 1.]

In their Response and Objection to Defendant's Motion to File a Surreply, Plaintiffs argue that Local Rule 7-1 does not permit parties to file a surreply to a motion and that the evidence to which Metal Technologies seeks to reply was actually created and given to Plaintiffs by Metal Technologies. [Filing No. 76 at 1.] They also point out that they had permission from the Court to use the evidence. [Filing No. 76 at 1-3.]

Local Rule 7–1 does not provide for a surreply in motion practice, and surreplies are only permissible under Local Rule 56–1(d) in briefing motions for summary judgment. S.D. Ind. L.R.

7–1, 56–1.  A party may, however, seek leave from the court to file a surreply to address new matters argued in a reply brief.  *Heckler & Koch, Inc. v. German Sport Guns GmbH,* 2013 WL 2406262, at *3 (S.D. Ind. 2013).

In its response brief, Metal Technologies cited to the declarations of thirty employees that it interviewed during the discovery process.  Plaintiffs then responded to Metal Technologies' arguments by citing to the payroll records from the same thirty declarants.[1]  Thus, it can hardly be said that Plaintiffs used "new evidence" in their reply brief when Metal Technologies, in its response, relied on the declarations of the same thirty employees to support its arguments.  The Court therefore denies Metal Technologies' Motion for Leave to File Surreply.

### B.  Motion to Certify Combined Class Action and FLSA Collective Action

At the outset, the Court notes the Seventh Circuit Court of Appeals' instruction that "employees who institute a collective action against their employer under the terms of the [FLSA] may at the same time litigate supplemental state-law claims as a class action certified according to Federal Rule of Civil Procedure 23(b)(3)."  *Ervin v. OS Rest. Servs.*, 632 F.3d 971, 973-74 (7th Cir. 2011).  *See also Robertson v. Steamgard*, 2012 WL 1232090, *2 (N.D. Ill. 2012) ("the Seventh Circuit has held that the FLSA is 'amenable to state-law claims for related relief in the same federal proceeding'").  This Court will heed that instruction, and finds it proper that Plaintiffs have brought, and seek certification of, both their FLSA claims and their IWPA claims in the same litigation.

---

[1] During the discovery process, Metal Technologies interviewed thirty employees and prepared declarations for each one.  [Filing No. 46 at 1-2.]  Plaintiffs sought a protective order from the Court to strike those declarations or limit Metal Technologies' communications with putative class members, accusing Metal Technologies of engaging in improper ex parte communications.  [Filing No. 46 at 1.]  The Court denied Plaintiffs' requests, but ordered Metal Technologies to provide the pay and time records of the thirty employees that it interviewed.  [Filing No. 58 at 8-9.] Plaintiffs cited to these records in their reply brief.

*1. Conditional Certification of FLSA Claims*

*a. Collective Action Certification Standard*

The FLSA provides that an action for unpaid minimum wages or unpaid overtime compensation may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). A collective action differs significantly from a class action brought pursuant to Federal Rule of Civil Procedure 23. *Moss v. Putnam County Hosp.*, 2010 WL 2985301 (S.D. Ind. 2010). The primary difference is that plaintiffs who wish to be included in a collective action must affirmatively opt in by filing a written consent with the Court, while members of a Rule 23 action are automatically included unless they affirmatively opt out. *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). Rule 23 and its standards governing class certification do not apply to a collective action brought under the FLSA. *Moss*, 2010 WL 2985301 at *1.

An employee may only bring a collective action on behalf of other employees who are similarly situated. 29 U.S.C. § 216(b). Therefore, to decide whether to initially certify a collective action, the Court must determine whether members of the proposed class are, in fact, similarly situated. *Campbell v. Advantage Sales & Mktg., LLC*, 2010 WL 3326752, *4 (S.D. Ind. 2010). Courts within this Circuit typically use a two-step inquiry. *Scott v. NOW Courier, Inc.*, 2012 WL 1072751, *7 (S.D. Ind. 2012); *Lallathin v. Ro Ro, Inc.*, 2010 WL 2640271 (S.D. Ind. 2010).

The first step, also known as the notice stage, involves analysis of the pleadings and affidavits that have been submitted to determine whether notice should be given to potential class members. *Campbell*, 2010 WL 3326752, at *3. Although the first step of certification does not impose a high burden on the plaintiff, "this does not mean that the 'modest factual showing' is a mere formality." *Id.* at *4. It serves as an important and functional step in the certification process

9

because "it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Adair v. Wis. Bell, Inc.*, 2008 WL 4224360, *4 (E.D. Wis. 2008) (citation omitted).

The second step of certification occurs after discovery has largely been completed and allows a defendant the opportunity to seek decertification of the class or restrict the class because various putative class members are not, in fact, similarly situated as required by the FLSA. *Id.* at *3. Under this more stringent inquiry, courts typically consider the following factors: "(1) whether plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Threatt v. CRF First Choice, Inc.*, 2006 WL 2054372, *5 (N.D. Ind. 2006).

The FLSA does not define the term "similarly situated" or instruct judges when to exercise their discretion and authorize notice to potential plaintiffs. *Raymer v. Mollenhauer*, 2010 WL 3259346 (N.D. Ind. 2010). Courts have held, however, that being similarly situated does not require identical positions of the putative class members; instead, it requires that common questions predominate among the members of the class. *Campbell*, 2010 WL 3326752, at 4; *Alvarez*, 605 F.3d at 449. Accordingly, the Court will consider whether Plaintiffs have presented evidence which supports a finding that they are similarly situated to putative class members.

*b. Rounding Policy*

Plaintiffs argue that Metal Technologies improperly rounded its employees' wages to pay them for scheduled hours of work rather than actual hours of work. [Filing No. 54 at 12.] They seek conditional certification for the following sub-class:

> Present and former hourly paid Metal Technologies employees who worked at any time from January 20, 2012 to the present and who, as shown by Metal Technologies' time and pay roll records, were not timely paid regular wages or overtime compensation on one or more occasion for time worked.

[Filing No. 54 at 11.]

Plaintiffs argue that Ms. Conrad admits that Metal Technologies rounds down its employees' actual hours of work. [Filing No. 54 at 18.] They allege that they and their coworkers are similarly situated because they all recorded their time the same way and had their time rounded down from actual hours of work to scheduled hours of work. [Filing No. 54 at 18.] Moreover, Plaintiffs allege that the rounding policy counters Metal Technologies' written policy, which states that Metal Technologies uses the employees' time records to determine their pay. [Filing No. 54 at 19.]

In response, Metal Technologies argues that the FLSA does not require employers to use time clocks or to pay employees for not working while on the clock. [Filing No. 63 at 14.] Metal Technologies admits that its policy is to pay employees based on their scheduled hours of work and their overtime hours when they submit an Overtime Authorization form. [Filing No. 63 at 14-15.] Moreover, Metal Technologies points out that Ms. Fulk testified that she was required to clock in before her scheduled time, but that Mr. Weil claimed that he clocked in close to his scheduled time. [Filing No. 63 at 15-16.] Metal Technologies claims that thirty declarations from its employees also establish that employees are not required to clock in early for pre-shift meetings and that if they clock in early or clock out late, they are not performing work duties. [Filing No. 63 at 16.] For these reasons, Metal Technologies claims that its time records are not a reliable indicator of the time employees are working. [Filing No. 63 at 17.]

In reply, Plaintiffs point out that Metal Technologies admits to using a rounding policy that favors the employer, and that its time records are the best and only evidence of employees' dates

and actual hours of work.  [Filing No. 72 at 2.]  They claim that the thirty declarations prepared by Metal Technologies are factually flawed because those declarants' time and payroll records show that Metal Technologies committed wage violations.  [Filing No. 72 at 4-6.]  Further, Plaintiffs reiterate that Ms. Conrad's testimony about Metal Technologies' rounding and disciplinary policies also contradicts Metal Technologies' thirty declarations.  [Filing No. 72 at 6-7.]  They argue that the difference regarding the time each employee clocked in and clocked out relates to an issue of damages and not certification.  [Filing No. 72 at 11.]

The Court finds that conditional certification for Plaintiffs' sub-class is appropriate here. While not making a determination based on the merits, the Court finds that Plaintiffs have made the necessary "modest factual showing" that Metal Technologies maintains a common policy or practice and that it violates the law.  *Campbell*, 2010 WL 3326752 at *4.  The parties agree that Metal Technologies uses a time clock to record its employees' times, and that rather than using their recorded time to determine their pay, Metal Technologies rounds down its employees' hours to their scheduled shifts.  The parties also do not dispute that former employees, including Ms. Fulk and Mr. Weil, and current employees were all subject to this rounding policy.  Where the parties' dispute arises, however, is in determining whether the rounding policy that Metal Technologies implements violates the FLSA.

At the outset, the Court acknowledges that rounding practices or policies to determine the employees' hours of pay are not prohibited by the FLSA.  *See* 29 C.F.R. § 785.48(b).  However, employers must implement the rounding policy in a way that will not result, "over a period of time, in failure to compensate the employees properly for all the time they have actually worked."  29 § 785.48(b).  At this stage of the litigation, Plaintiffs have made a sufficient showing that Metal Technologies' rounding policy was improper.  First, Ms. Conrad testified that employees were

allowed to clock in at least fifteen minutes early, and Metal Technologies' Employee Handbook states that it determined its employees' pay based on their recorded time.  Second, Plaintiffs analyzed payroll records from twenty employees and found that Metal Technologies rounded down an average of 4.85 hours of work time per employee per month.  Moreover, the payroll records also demonstrate that most of the employees had their recorded time rounded down when they clocked in prior to their scheduled shift and rounded up when they clocked out after their scheduled shift.  This evidence shows that the rounding policy benefited Metal Technologies.

Further, the employees' differences regarding how early they clock in or how late they clock out is immaterial at the conditional certification stage.  Such differences do not refute that a common policy or practice of rounding in Metal Technologies' favor exists. Moreover, courts routinely grant motions to conditionally certify prospective classes as long as common questions predominate, which is the case here.  *See Binissia v. ABM Indus., Inc.*, 2014 WL 793111, at *5 (N.D. Ill. 2014) (listing cases).  If anything, the differences would bear on the amount of damages, if any, to which an employee would be entitled.

The Court finds that Plaintiffs met their burden for conditional certification, and grants Plaintiffs' Motion to Certify the FLSA collective action for improper rounding policy.

### c. Work Uniforms

Plaintiffs argue that Metal Technologies improperly deducted money from its employees' wages to cover the costs of their work uniforms.  They seek conditional certification for the following sub-class:

> Present and former hourly paid Metal Technologies employees who worked at any time from January 20, 2012 to the present and who, as shown by Metal Technologies' pay roll records, were not timely paid overtime compensation on one or more occasion based upon wage deductions taken by Metal Technologies to cover costs for work uniforms.

[Filing No. 54 at 11.]

Plaintiffs allege that the deductions violate a rule interpreting the FLSA that requires wages to be paid finally and unconditionally or free and clear.  [Filing No. 54 at 16-17 (citing 29 C.F.R. § 531.35).]  They further claim that such violations would have taken place during any week when a class member either was not paid enough to cover minimum wage or worked over forty hours. [Filing No. 54 at 17.]

In response, Metal Technologies argues that the employees' wage deductions to rent work clothes did not result in being paid below the minimum wage.  [Filing No. 63 at 21.]  Metal Technologies points out that Plaintiffs acknowledge that the employees' average rate of pay is well above the federal minimum wage, and a $2.55 wage deduction per week would not bring the employees' wages below the minimum wage.  [Filing No. 63 at 21.]  Additionally, Metal Technologies argues that wage deduction to rent work clothes is not considered a "kickback" under the FLSA because employees can either voluntarily rent work clothes or wear their own clothes to work.  [Filing No. 63 at 22.]  It claims that renting clothes is actually an employee benefit and that in addition to the employees' wage deductions, Metal Technologies pays half of the rental fee. [Filing No. 63 at 22.]

Plaintiffs in their reply point out that twenty-six declarants out of the thirty declarants interviewed by Metal Technologies had their wages deducted to pay for work uniforms.  [Filing No. 72 at 4-6.]  They reiterate that Metal Technologies violated the FLSA's "free and clear, no kickback" rule and that an FLSA regulation expressly rejects Metal Technologies' argument that the uniform deduction is a benefit for the employee.  [Filing No. 72 at 16; Filing No. 72 at 21.]

First, the Court agrees that even if unlawful, the uniform deduction cannot implicate a minimum wage violation for any employee already identified in the case, and certainly not for

Plaintiffs.  The only possible claim would be for an overtime violation, and that hinges on whether the deduction violates the FLSA's anti-kickback rule.

Employers may deduct the costs of facilities that primarily benefit the employers as long as it does not cut into the minimum or overtime wages of an employee.  29 C.F.R. § 531.35.  This is because wages are "received" when they are paid "free and clear," and the employee cannot "kick-back" directly or indirectly to the employer any part of the wage delivered to the employee.  29 § 531.35.  Facilities that are primarily for the benefit of the employer includes "the cost of uniforms . . . where the nature of the business *requires* the employee to wear a uniform."  29 § 531.3(d)(2) (emphasis added).

The FLSA and its regulations do not define the term "uniform."  Although not binding authority, the Court looks to the U.S. Department of Labor Wage and Hour Division's Fields Operations Handbook ("FOH"), which defines "uniform" as follows:

> a.   If an employer merely prescribes a general type of ordinary basic street clothing to be worn while working and permits variations in details of dress, the garments chosen by the employees would not be considered to be uniforms.
>
> b.   On the other hand, where the employer does prescribe a specific type and style of clothing to be worn at work, e.g. where a restaurant or hotel requires a tuxedo or a skirt and blouse or jacket of a specific or distinctive style, color, or quality, such clothing would be considered uniforms.
>
> c.   Other examples would include uniforms required to be worn by guards, cleaning and culinary personnel, and hospital and nursing home personnel.

FOH § 30c12(f).

Given the undisputed voluntary nature of the Metal Technologies uniform program – underscored by the fact that up to half of its employees do not participate – the Court concludes that Plaintiffs have not presented sufficient evidence to establish that the uniform deduction violates the FLSA.  First, the rental uniform cost is not a "kickback" for the employer because

employees are paid significantly above minimum wage and Metal Technologies pays half of the rental fee of the uniforms.  Further, employees have complete freedom to rent the work uniforms for their own benefit, or they can wear ordinary clothing to work.  Based on the guidelines noted above, Metal Technologies has not "prescribed" anything, and the optional work uniform does not implicate the FLSA's prohibition against deductions for required uniforms.

Thus, the Court denies Plaintiffs' Motion to Certify the FLSA collective action for wage deductions to pay for work uniforms.

### d. Lunch Breaks

Plaintiffs claim that Metal Technologies treated employees' lunch breaks of twenty minutes or less as thirty minute, unpaid lunch breaks.  Plaintiffs, therefore, seek conditional certification for the following sub-class:

> Present and former hourly paid Metal Technologies employees who worked at any time from January 20, 2012 to the present and who, as shown by Metal Technologies' time and pay roll records, were not timely paid regular wages or overtime compensation on one or more occasions for time worked, because the employee took a lunch break of twenty minutes or less.

[Filing No. 54 at 11.]

Plaintiffs argue that during her deposition, Ms. Conrad admitted that Metal Technologies has treated lunch breaks of twenty minutes or less as thirty minute, unpaid lunches.  [Filing No. 54 at 6; Filing No. 54 at 20.]  They argue that Metal Technologies' Payroll Department reviewed all of its employees' time records and ignored the actual time punches for their lunch breaks. [Filing No. 54 at 20.]  Moreover, Plaintiffs request to use the FLSA's bright line test that employees' breaks of twenty minutes or less are considered compensable breaks.  [Filing No. 54 at 21.]

In response, Metal Technologies argues that Plaintiffs fail to establish that the class members are similarly situated or there is a policy or practice regarding unpaid lunch breaks of twenty minutes or less.  First, it claims that the thirty declarants interviewed by Metal Technologies testified that they took thirty minute lunch breaks, and two of them who worked during their lunch breaks completed Overtime Authorization forms to be compensated for their time.  [Filing No. 63 at 23.]  As to the class representatives, Metal Technology argues that Mr. Weil testified that he always took a thirty minute lunch break, and that Ms. Fulk's records demonstrate that she never took a lunch break of twenty minutes or less.  [Filing No. 63 at 23-24.]  Metal Technologies also argues that the payroll records do not establish whether employees were engaged in compensable time.  [Filing No. 63 at 24.]

In reply, Plaintiffs argue that Ms. Conrad admitted that employees who clocked in and out for lunch breaks of twenty minutes or less were treated as though they took unpaid, thirty minute lunch breaks.  [Filing No. 72 at 2-3.]  Plaintiffs further argue that the records from twenty-four of the thirty declarants interviewed by Metal Technologies demonstrate that they were not paid for lunch breaks of twenty minutes or less.  [Filing No. 72 at 4-6.]  Plaintiffs also claim that employees would have no reason to complete the Overtime Authorization forms when they took lunch breaks of twenty minutes or less because their time was already recorded.  [Filing No. 72 at 8.]

The Court finds that Plaintiffs have identified and articulated a common policy or practice that as applied to some employees may well constitute an FLSA violation.  That showing is insufficient to support certification, however, because Plaintiffs themselves do not meet the class definition and are not "similarly situated" to the putative class members they seek to represent.  29 U.S.C. § 213(b)(1).  As Metal Technologies points out, Ms. Fulk's records – the very records on which she bases her claims – demonstrate that she has never taken a lunch break of twenty minutes

17

or less.  Plaintiffs have pointed to no other evidence to show that she did take lunch breaks of twenty minutes or less.  Similarly, during his deposition, Mr. Weil testified that he was always given a thirty minute lunch break, and no other evidence has been submitted to show otherwise.

The Court, therefore, denies Plaintiffs' Motion to Certify the FLSA collective action for employees who had unpaid lunch breaks of twenty minutes or less as Plaintiffs themselves have made no showing that they have been harmed by that policy and thus could not be similarly situated to any class members.

### 2. Certification of Claims under Rule 23

#### a. Rule 23 Class Certification Standard

In deciding whether to certify a class, the Court may not blithely accept as true even the well-pleaded allegations of the complaint but must instead "make whatever factual and legal inquiries are necessary under Rule 23" to resolve contested issues.  *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).  Specifically, the Court must find that the putative class satisfies the four prerequisites set forth in Federal Rule of Civil Procedure 23(a).  If the putative class does satisfy these prerequisites, the Court must additionally find that it satisfies the requirements set forth in Federal Rule of Civil Procedure 23(b), which vary depending upon which of three different types of classes is proposed.

It is the plaintiff's burden to prove first that an identifiable class exists that merits certification under Federal Rule of Civil Procedure 23(a).  *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).  The four prerequisites under Rule 23(a) are: "(1) [that] the class is so numerous that joinder of all its members is impracticable; (2) [that] there are questions of law or fact common to the class; (3) [that] the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) [that] the representative parties will fairly and

18

adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Class certification is not appropriate unless the named plaintiffs establish all four prerequisites.  *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982).

Similar to their FLSA claims, Plaintiffs seek to certify three sub-classes under Rule 23, each divided into two further subclasses.  They challenge the same policies for illegally rounding employees' hours, for deducting employees' wages to pay for work uniforms, and for treating lunch breaks of twenty minutes or less as unpaid, thirty minute lunch breaks.  Because of the manner in which each of them were terminated from Metal Technologies, Plaintiffs argue two separate state law theories. For current employees or employees who voluntarily terminated their employment with Metal Technologies, Plaintiffs assert that Metal Technologies' actions constitute a violation under the IWPA.  For former employees who were involuntarily terminated – and who are therefore foreclosed from bringing an IWPA claim – Plaintiffs assert a breach of contract theory under Indiana law.  The Court will address the latter theory first.

### b. Breach of Contract under Indiana Law

Plaintiffs assert their intention to seek a class action claim under Indiana law for a breach of contract.  [Filing No. 54 at 1.]  They request permission to allow involuntarily terminated employees to participate in the class to recover under "an ordinary breach of contract theory." [Filing No. 54 at 22 n.3.]

In response, Metal Technologies argues that Plaintiffs "point to no contract that Metal Technologies has violated by deducting wages," [Filing No. 63 at 3], and also asserts that Plaintiffs' breach of contract claim is preempted by the FLSA, [Filing No. 63 at 32].

Plaintiffs reply with a footnote simply stating that employees who were involuntarily terminated could be placed in a separate sub-class to recover under a breach of contract theory due

19

to the wage deduction to pay for uniforms, but without the "automatic treble damages." [Filing No. 72 at 16.]

   With respect to their "breach of contract theory," Plaintiffs fail to meet their burden of proof to merit class certification. *Oshana,* 472 F.3d at 513.  First and most problematic, Plaintiffs neither allege nor establish that the elements of an Indiana breach of contract claim are actually met: the existence of a contract, the defendant's breach thereof, and damages.  *Murat Temple Ass'n, Inc. v. Live Nation Worldwide, Inc.*, 953 N.E.2d 1125, 1128-29 (Ind. Ct. App. 2011) (citations omitted).  Plaintiffs seek to proceed under a breach of contract "theory" because "former employees who were involuntarily terminated . . . cannot participate in a Rule 23 class that recovers the damages (treble damages) available to other class members under the Indiana Wage Payment Statute." [Filing No. 54 at 22 n.3.]  To avoid this problem, Plaintiffs seek to pursue their state law claims under a "breach of contract theory." [Filing No. 54 at 22 n.3.]  Per the Amended Complaint, Mr. Weil, who was also involuntarily terminated, would represent the interests of the employees who were involuntarily terminated.  [Filing No. 66 at 11.]  However, as Metal Technologies states, Plaintiffs do not point to the contract that was breached.

   The Court suspects that the real reason behind Plaintiffs' breach of contract claim is an attempt to circumvent the current procedural and damages limitations in the statutory remedy available.   In order to seek recovery for unpaid wages, employees who were involuntarily terminated must file their claim in accordance with the Indiana Wage Claims Statute.  *Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 646 F.3d 487, 490 (7th Cir. 2011) ("The [Indiana Wage] Claims Statute . . . applies to employees seeking unpaid wages after their employer has fired them.").  Unlike the IWPA, violations of the IWCA cannot be pursued in a class action.  The problem with Plaintiffs' strategy is the complete absence of any evidence supporting the existence

of a valid contract to support it.  Thus, without evidence to support it, Plaintiffs' Motion to Certify this sub-class is fatal.

At the conditional certification stage, a court must engage in a "rigorous analysis" to determine whether all the Rule 23 requirements are satisfied, and that "'rigorous analysis' will entail some overlaps with the merits of the . . . underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  Thus, in addition to Plaintiffs' failure to establish that an underlying claim actually exists, Plaintiffs also fail to satisfy the threshold requirements of Federal Rule of Civil Procedure 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one of the conditions of Rule 23(b).  Plaintiffs provide no evidence to show whether the sub-class for the alleged breach of contract claim is sufficiently numerous.  They fail to establish questions of law or fact common to the class since it is unknown whether involuntarily terminated employees were bound to the same alleged "contract."  Likewise, it is difficult to determine whether Mr. Weil's claims and defenses are typical of the claims and defenses of the sub-class, or whether Mr. Weil would be an adequate class representative for the sub-class allegedly harmed by an apparent breach of contract.

The Court denies conditional certification for Plaintiffs' breach of contract claim with respect to all three types of conduct alleged.  Moreover, the Court removes Mr. Weil as a class representative for any IWPA claim since he was involuntarily terminated.  Nevertheless, Mr. Weil remains free to pursue a breach of contract claim against Metal Technologies on an individual basis as Metal Technologies did not move to dismiss it.

*c. Rounding Policy*

Ms. Fulk argues that Metal Technologies rounds its employees' time records down and pays them for their scheduled hours of work rather than actual hours of work.  She seeks to certify the following sub-class:

> Present and former hourly paid Metal Technologies employees who worked at any time from January 20, 2013 to the present and who, as shown by Metal Technologies' time and pay roll records, were not timely paid regular wages on one or more occasion for time worked.

[Filing No. 54 at 11.]

Ms. Fulk argues that Metal Technologies violated the IWPA because the IWPA governs the frequency and the amount an employer must pay its employees.  [Filing No. 54 at 22-23.]

*i. Rule 23(a) Analysis*

Ms. Fulk claims that she meets all four prerequisites of Rule 23(a): (1) the class meets the numerosity requirement because Ms. Conrad's testimony admits that 500 to 550 hourly paid employees were subject to the rounding policy and have worked for Metal Technologies since January 20, 2012, [Filing No. 54 at 25]; (2) commonality is met because Metal Technologies has a policy of rounding down employees' time records and underpaying their wages, [Filing No. 54 at 25-26]; (3) typicality is met because the claims or defenses of Ms. Fulk are typical of the claims or defenses of the class since they all had their recorded time rounded down to their scheduled hours of work, [Filing No. 54 at 27-28]; and (4) adequacy is satisfied because Ms. Fulk has no conflicting interests with the class, she is engaged and motivated to recover unpaid wages, and she is represented by an attorney who is experienced and motivated, [Filing No. 54 at 28-29].

Metal Technologies, in turn, argues that the commonality requirement is not met, that Ms. Fulk's claims are not typical of the claims of the class members, and that Ms. Fulk is not an adequate class representative.  [Filing No. 63 at 28.]

22

*a) Commonality & Typicality*

Ms. Fulk claims that Metal Technologies maintains a policy that systematically rounds down its employees' time records and pays them only for their scheduled hours of work rather than actual hours of work.  [Filing No. 54 at 25-26.]  Ms. Fulk further argues that the typicality requirement is satisfied because the claims or defenses of Ms. Fulk are typical of the claims or defenses of the class since they all had their recorded time of work rounded down to scheduled hours of work.

In its response, Metal Technologies claims that Ms. Fulk fails to establish a "glue" to hold the claims together, and that there is no typicality between the class representative and the classes.  [Filing No. 63 at 27-28.]  Metal Technologies argues that Ms. Fulk testified that as an Assistant Cell Lead, she was required to arrive before her shift to perform work, whereas other Assistant Cell Leads testified that they voluntarily arrived early to socialize, eat breakfast, or smoke, which are activities for which the employer is not required to pay.  [Filing No. 63 at 27.]

A class action requires "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), and the plaintiff's claims or defenses must be "typical of the claims or defenses of the class[,]" Fed. R. Civ. P. 23(a)(3).  Commonality is satisfied when there is a "common nucleus of operative fact," that is, a "common question which is at the heart of the case." *Rosario v. Livaditis*, 963 F.2d 1013, 1018, (7th Cir. 1992) (citation omitted).  All questions of fact or law need not be identical; rather, the requirement is satisfied as long as the class claims arise out of the same legal or remedial theory.  *In re Ready–Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 167 (S.D. Ind. 2009).  The commonality and typicality requirements tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so

interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n. 13 (1982). Although typicality may exist even if there are factual distinctions between the claims of the named plaintiffs and other class members, the requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir.2009) (citation omitted).

Ms. Fulk has satisfied both the commonality and typicality requirements. The common question that Ms. Fulk has presented is the same for all members of the proposed sub-class: whether Metal Technologies systematically rounded down employee time records to only pay them for scheduled hours of work rather than actual hours of work. Ms. Fulk provided the deposition of Ms. Conrad, where she admits that per work policy, she systematically rounds the employees' actual hours of work down to pay them for their scheduled hours of work. Ms. Fulk also provided payroll records that demonstrate that Metal Technologies rounded down its employees' actual hours of work. Although there may be some factual distinctions between Ms. Fulk and the putative class members, such as how early or late each employee clocked in or out, or the employees' work duties and titles, such differences are immaterial for purposes of certification of a class for the rounding policy. They were all full time, hourly-paid employees who were required to clock in at the beginning of their shift and clock out at the end of their shift, and who were all subject to the same rounding policy. Ms. Fulk has sufficiently demonstrated that her claims are similar to the claims of the putative class members.

*b) Adequacy of Representation*

Ms. Fulk argues that she and the putative class members have the same claims for unpaid wages. [Filing No. 54 at 28.] She claims she is motivated to recover her unpaid wages and

damages, and she is similarly motivated to do the same for the putative class members.  [Filing No. 54 at 28.]   She also alleges that her counsel is competent and experienced in both class and collective action claims, and has pledged to commit the full resources of the firm to the prosecution of the case.  [Filing No. 54 at 28-29.]

Metal Technologies argues that "to the extent that [Ms. Fulk] seek[s] class certification under Rule 23 for weeks [she] would be entitled to overtime, this is improper and the Court should deny [her] Motion to Certify."  [Filing No. 63 at 29.]  Metal Technologies argues that the FLSA is the exclusive remedy for overtime, and that the IWPA does not establish more "rigorous" protections and "greater" benefits for overtime wages.  [Filing No. 63 at 29-30.]  Metal Technologies claims that Plaintiffs would not have a sufficient interest in the outcome because "most employees, including Plaintiffs, worked 56 hours per week," which is way over the threshold for overtime wages.  [Filing No. 63 at 31.]

In her reply, Ms. Fulk argues that she is not pursuing overtime pay multiplied by the treble damages under the IWPA, but rather, regular wages multiplied by the treble damages.  [Filing No. 70 at 20.]  She further argues that her claims under the IWPA are not preempted by the FLSA.  [Filing No. 72 at 19.]

The Court is required to find whether "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry is composed of two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest[s] of the class members."  *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (citation and quotation marks omitted).  To adequately represent the class, the representative plaintiffs "must be

part of the class and possess the same interest and suffer the same injury as the class members."
*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citation and quotation marks omitted).

The Court finds that the requirement of adequacy of representation is met.  Ms. Fulk has
sufficiently demonstrated that she shares the same interests and suffered the same injuries as the
injuries suffered by the putative class members.  Plaintiffs have also demonstrated their counsel
has a sufficient interest in the outcome of the case, and is competent and motivated to litigate this
case given his experience with previous class actions.

Moreover, the Court is not persuaded by Metal Technologies' argument that the FLSA
preempts the IWPA on this issue.  As pointed out by Plaintiffs, the FLSA contains a savings clause
that allows a state to pass its own wage and hour laws.  29 U.S.C. § 218.  "[T]he statute's plain
language evinces a clear intent to preserve rather than supplant state law."  *See Knepper v. Rite
Aid Corp.*, 675 F.3d 249, 262 (3d Cir. 2012) (holding that where overtime provisions of the state
laws establish the same protections as the FLSA, the Court found that state laws were not
preempted by the FLSA.  "Congress explicitly contemplated the dual enforcement of the FLSA").
Ms. Fulk argues, and the Court agrees, that the IWPA claims provide protections that the FLSA
does not, such as the requirement to be paid in full and on time.

The Court, therefore, concludes that Ms. Fulk has set forth sufficient evidence that she
adequately represents the interests of the sub-class.

### ii. Rule 23(b)(3) Analysis

Ms. Fulk argues that she meets the two requirements of Rule 23(b)(3).  First, she claims
that her issues predominate because Metal Technologies utilizes a non-neutral method of rounding
where Metal Technologies rounds actual time entries down and pays only for scheduled hours of
work.  [Filing No. 54 at 30-31.]  Second, she argues that there is uniformity of factual and legal

claims of the class members and that prosecuting these claims together would be an effective vehicle given the litigation costs and judicial economy.  [Filing No. 54 at 31-32.]

In response, Metal Technologies argues that Ms. Fulk failed to demonstrate that Metal Technologies had a common policy or practice that required employees to work before and after their scheduled shift, and that individualized questions of law or fact predominate.  [Filing No. 63 at 31-32.]

Under Rule 23(b)(3), a class action may be maintained if Rule 23(a) is satisfied and if the court finds that the questions of law or fact common to class members predominate over any questions affecting individual members, and that a class action is superior to other available methods of adjudicating the controversy.  The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

"'Considerable overlap exists between Rule 23(a)(2)'s commonality prerequisite and 23(b)(3).  Rule 23(a)(2) requires that common issues exist; Rule 23(b)(3) requires that they predominate.'"  *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 448 (S.D. Ind. 2012) (citations omitted).

Having already found that the commonality prerequisite of Rule 23 (a)(2) is satisfied,  the Court concludes that the common issue regarding Metal Technologies' alleged policy of systematically rounding its employees' hours down to pay them for their scheduled hours of work rather than their actual hours of work predominates over any individualized issues that might exist. The Court grants Ms. Fulk's Motion to Certify the IWPA class action for the rounding policy.  In addition, because the IWPA does not apply to employees whose employment was involuntarily

terminated, membership of the sub-class will consist only of current employees and former employees who voluntarily terminated their employment.

### d. Work Uniforms

Ms. Fulk argues that Metal Technologies' wage deductions to pay for work uniforms violates the IWPA, and she seeks certification for the following sub-class:

> Present and former hourly paid Metal Technologies employees who worked at any time from January 20, 2013 to the present and who, as shown by Metal Technologies' pay roll records, were not timely paid regular wages on one or more occasions based upon wage deductions taken by Metal Technologies to cover costs for work uniforms.

[Filing No. 54 at 11.]

Ms. Fulk argues that Metal Technologies failed to deduct wages in accordance with Ind. Code § 22-2-6-2. [Filing No. 54 at 15.] She claims that prior to July 1, 2015, Metal Technologies' deduction of employees' wages to rent work uniforms was not permitted under Indiana law. [Filing No. 54 at 16.] After July 1, 2015, however, Ms. Fulk argues that Metal Technologies failed to follow the strict statutory requirements, including that the writing for the wage assignment must contain a signature from an employer's representative that states that the terms are revocable at any time by the employee with written notice to the employer. [Filing No. 54 at 16.]

### i. Rule 23(a) Analysis

Ms. Fulk argues that she meets all the requirements under Rule 23(a): (1) numerosity is satisfied because Ms. Conrad's testimony admits that 500 to 550 hourly paid employees were employed by Metal Technologies since January 20, 2012, and were subject to Metal Technologies' wage deduction practices and policies, [Filing No. 54 at 25]; (2) the common question is satisfied because Ms. Fulk asks whether Metal Technologies is liable because it deducted wages from its employees for the cost of uniforms, [Filing No. 54 at 25-26]; (3) typicality is met because Ms. Fulk

and the putative class members were subject to the same wage deductions for work uniforms, and therefore, they have typical claims or defenses, [Filing No. 54 at 27-28]; and (4) adequacy is met because Ms. Fulk adequately protects the interest of the class since she has no conflicting interests, she is motivated to recover unpaid wages, and she is represented by an attorney who is experienced and motivated, [Filing No. 54 at 28-29].

In response, Metal Technologies' sole challenge under Rule 23(b)(3) is that this sub-class is overly broad because it includes employees from Metal Technologies who were involuntarily terminated.  [Filing No. 63 at 32.]

Plaintiffs in their reply point out that Metal Technologies' only dispute is that the class is too broad, and that it ultimately does not disagree with Plaintiffs' request to certify the sub-class. [Filing No. 72 at 16.]

Given the absence of any opposition, the Court concludes that Ms. Fulk meets all the requirements under Rule 23(a) for the uniform deduction.  In response to Metal Technologies' argument, the Court already determined that employees who were involuntarily terminated cannot be part of any sub-class under an IWPA claim.  Additionally, under the Indiana Wage Assignment Statute, deductions from wages are considered an assignment, I.C. § 22-2-6-1, and as of July 1, 2015, the statute contains a specific provision that allows the deduction of uniforms, I.C. § 22-2-6-2(14).  In order for the assignment of wages to be valid, the assignment must be in writing, signed by the employee, revocable at any time by the employee upon written notice to the employer, and agreed to in writing by the employer.  I.C. § 22-2-6-2(a)(1).  Thus, a violation of this statute could mean that the employer failed to pay wages when due in violation of the IWPA.  Ms. Fulk sufficiently demonstrated that the Premiums and Deductions forms that employees signed did not comply with the statutory requirements.  The forms contained no area for the

representative employer to sign and contained no language regarding the employee's right to revoke the assignment of wages.

Accordingly, Ms. Fulk demonstrated the class is numerous because it may consist anywhere from 500 to 550 hourly paid employees.  The common question is satisfied: whether Metal Technologies' deduction of wages for the cost of uniforms violated the IWPA.  Typicality is met because Ms. Fulk and the putative class were subject to the same wage deductions for the cost of work uniforms.  Lastly, adequacy of representation is satisfied because Ms. Fulk has no conflicts with the putative class, she shares the same interest to resolve the matter, and she is represented by an attorney who is competent and experienced in class action lawsuits.

### ii. Rule 23(b)(3) Analysis

Ms. Fulk argues that the two prongs under Rule 23(b)(3) are met.  [Filing No. 54 at 30.] She argues that the predominance requirement is met because the most significant factual issue is that Metal Technologies deducts costs of uniforms from its employees' wages, and the most significant legal issue is whether Metal Technologies was permitted by Indiana law to deduct the costs of the uniforms. [Filing No. 54 at 31.]  Ms. Fulk also claims that the superiority requirement is met because prosecuting this type of litigation individually would be more difficult and expensive.  [Filing No. 54 at 32.]

Again, Metal Technologies does not respond.

The Court concludes that Ms. Fulk provided sufficient evidence to show that questions of law or fact common to class members predominate over questions of individual members.  The Court, therefore, grants Ms. Fulk's Motion to Certify the sub-class under the IWPA for improper wage deductions.  Moreover, the Court reiterates that membership will consist of current employees and former employees who voluntarily terminated their position.

*e. Lunch Breaks*

Ms. Fulk argues that Metal Technologies violated the IWPA when it failed to pay its employees' lunch breaks of twenty minutes or less.  [Filing No. 54 at 22-23.]  Ms. Fulk seeks certification for the following sub-class under the IWPA:

> Present and former hourly paid Metal Technologies employees who worked at any time from January 20, 2013 to the present and who, as shown by Metal Technologies' time and pay roll records were not timely paid regular wages on one or more occasion for time worked, because the employee took a lunch break of twenty minutes or less.

[Filing No. 54 at 11.]

*i. Rule 23(a) Analysis*

Ms. Fulk argues that she meets all of the requirements under Rule 23(a):  (1) numerosity is satisfied because Ms. Conrad's testimony admits that 500 to 550 hourly paid employees were employed by Metal Technologies since January 20, 2012, and were subject to Metal Technologies' time rounding practices and policies, [Filing No. 54 at 25]; (2) commonality is satisfied because Ms. Fulk asks whether Metal Technologies is liable for systematically recording its employees' lunch breaks of twenty minutes or less as unpaid time, [Filing No. 54 at 25-26]; (3) typicality is met because Ms. Fulk and the class members were subject to the same lunch break scheme, and thus they have typical claims or defenses, [Filing No. 54 at 27-28]; and (4) adequacy is met because Ms. Fulk adequately protects the interest of the class since she has no conflicting interests with the class, she is engaged and motivated to recover unpaid wages, and she is represented by an attorney who is experienced and motivated, [Filing No. 54 at 28-29].

In response, Metal Technologies challenges the commonality and typicality requirements under Rule 23(a).  Metal Technologies argues that most of the employees who were interviewed by Metal Technologies' attorney testified that they took a thirty minute lunch break every day. [Filing No. 63 at 33.]  They argue that Ms. Fulk relies on only one employee's records to show that sometimes the employee clocked out and in for twenty minutes or less, and that no evidence supports that employees who clocked back in engaged in work duties.  [Filing No. 63 at 33.]

Ms. Fulk argues that Metal Technologies' arguments are irrelevant since Metal Technologies keeps track of its employees' lunch breaks by having employees clock in and out. [Filing No. 72 at 17.]  She claims that Metal Technologies' records indicate that employees whose lunches lasted twenty minutes or less had their lunch breaks treated as thirty minute unpaid lunches.  [Filing No. 72 at 17.]

This proposed lunch break Rule 23 class fails for the same reason as the collective action failed. While Ms. Fulk has certainly demonstrated that a possible common policy or practice exists regarding unpaid, under twenty-minute lunch breaks, her records demonstrate that she never took a lunch break of twenty minutes or less.  She also points to no other evidence to show that she was subject to this policy or practice.  Ms. Fulk has thus failed to meet the typicality requirement.  Fed. R. Civ. P. 23(a)(3). Accordingly, the Court denies Ms. Fulk's Motion to Certify this sub-class.

### ii. Rule 23(b)(3) Analysis

Ms. Fulk argues that the two prongs under Rule 23(b)(3) are met.  [Filing No. 54 at 30.] She argues that the predominance requirement is met because the most significant factual issue is whether Metal Technologies ignores its time records and treats employees' lunch breaks of twenty minutes or less as unpaid time, and the most significant legal issue is whether Metal Technologies was permitted by Indiana law to do so. [Filing No. 54 at 31.]  Ms. Fulk also claims that the

superiority requirement is met because prosecuting this type of litigation individually would be more difficult and expensive. [Filing No. 54 at 32.]

Because Ms. Fulk does not meet the requirements under Rule 23(a), Ms. Fulk also does not meet Rule 23(b)(2). However, the Court will address the requirements under Rule 23(b)(2) nonetheless. Although Ms. Fulk marshaled evidence that Metal Technologies did not pay some employees their lunch breaks of twenty minutes or less, she failed to demonstrate that this practice was a predominant issue as it did not even apply to her. Therefore, the Court denies Ms. Fulk's Motion to Certify the under twenty-minute lunch break sub-class.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** Metal Technologies' Motion to File a Surreply, [Filing No. 75], and **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Certify Combined Class Action and FLSA Collective Action, [Filing No. 53].

The Court **DENIES** Plaintiffs' Motion to Certify the FLSA collective action for the following sub-classes: 1) unlawful wage deductions for uniforms, and 2) unpaid lunch breaks of twenty minutes or less. The Court also **DENIES** Plaintiffs' Motion to Certify Class Action under Rule 23 for the following sub-classes: 1) breach of contract under Indiana law for unlawful wage deductions under any of the three theories, and 2) unpaid lunch breaks of twenty minutes or less in violation of the IWPA.

The Court **GRANTS** Plaintiffs' Motion to Certify the FLSA collective action for Metal Technologies' rounding policy. The Court also **GRANTS** Plaintiffs' Motion to Certify the Class Action under Rule 23 for the following sub-classes: 1) Metal Technologies' rounding policy, and 2) unlawful wage deductions for uniforms both as applied to current employees and former employees whose employment was voluntarily terminated.

Accordingly, the Court **CONDITIONALLY CERTIFIES** the following sub-class under the FLSA:

> · Present and former hourly paid Metal Technologies employees who worked at any time from January 20, 2012 to the present and who, as shown by Metal Technologies' time and pay roll records, were not timely paid regular wages or overtime compensation on one or more occasion for time worked.

The Court also **CERTIFIES** under Rule 23 the following two sub-classes under the IWPA with revised class definitions:

> · Hourly paid employees from Metal Technologies who presently work there or voluntarily terminated their employment, who worked at any time from January 20, 2013 to the present and who, as shown by Metal Technologies' time and pay roll records, were not timely paid regular wages on one or more occasion for time worked.

> · Hourly paid employees from Metal Technologies who presently work there or voluntarily terminated their employment, who worked at any time from January 20, 2013 to the present and who, as shown by Metal Technologies' pay roll records, were not timely paid regular wages on one or more occasions based upon wage deductions taken by Metal Technologies to cover costs for work uniforms.

Moreover, the Court **DESIGNATES** Brian A. Weil and Melissa D. Fulk as representatives for the FLSA collective action, and **DESIGNATES** Melissa D. Fulk as representative for the class action pursuant to Rule 23.  The Court further **DESIGNATES** Robert P. Kondras, Jr. of Hunt, Hassler & Lorenz LLP as lead class counsel pursuant to Fed. R. Civ. P. 23(g).

The Court **DENIES AS MOOT** Plaintiffs' Motion for Approval of Proposed Notice of Class Action and FLSA Collective Action.  [Filing No. 55.]  The Court further **GRANTS** Plaintiffs Motion for Pre-trial Conference, [Filing No. 78], and asks the magistrate judge to conduct such conference to work with the parties to develop both a further scheduling order and the form of appropriate notice to the classes in light of the foregoing ruling.

Date:  January 25, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana


Distribution:

Robert Peter Kondras, Jr.
HUNT HASSLER KONDRAS & MILLER LLP
kondras@huntlawfirm.net

Robert F. Hunt
HUNT HASSLER LORENZ & KONDRAS LLP
hunt@huntlawfirm.net

Jacob H. Miller
HUNT HASSLER LORENZ KONDRAS LLP
jmiller@huntlawfirm.net

Melissa K. Taft
JACKSON LEWIS P.C. - Indianapolis
melissa.taft@jacksonlewis.com

Michael W. Padgett
JACKSON LEWIS P.C. - Indianapolis
padgettm@jacksonlewis.com