UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| BRIAN A. WEIL, | ) | |
| MELISSA D. FULK, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 2:15-cv-00016-JMS-MPB |
| vs. | ) | |
| | ) | |
| METAL TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiffs Brian A. Weil and Melissa D. Fulk filed a Complaint asserting claims against Defendant Metal Technologies, Inc. ("Metal Technologies") for improper wage deductions and failure to pay wages under the Fair Labor Standard Act ("FLSA") and the Indiana Wage Payment Act ("IWPA"). [Filing No. 1.] The Court conditionally certified one subclass under the FLSA and certified two subclasses under Rule 23 and the IWPA. [Filing No. 79.] Presently pending before the Court are Cross-Motions for Partial Summary Judgment, [Filing No. 321; Filing No. 330], and Metal Technologies' Motion to Decertify several of the subclasses, [Filing No. 332]. For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Partial Summary Judgment, **GRANTS** Metal Technologies' Motion to Decertify, and **DENIES AS MOOT** Metal Technologies' Motion for Partial Summary Judgment.

## I.
### BACKGROUND

**A. Timekeeping Practices**

Metal Technologies is a manufacturing facility located in Bloomfield, Indiana that manufactures automobile parts for car manufacturers like General Motors, Chrysler, Hyundai, and

Honda.  [Filing No. 330-1 at 6.]  Manufacturing employees work one of three shifts: first shift, from 7:00 a.m. to 3:30 p.m.; second shift, from 3:00 p.m. to 11:30 p.m.; or third shift, from 11:00 p.m. to 7:30 a.m.  [Filing No. 330-1 at 9.]  The shifts overlap by 30 minutes, and during that overlapping time, employees are relieved of their duties by the next shift's employees, and they use the remaining time to clean up their work areas and exchange information about the previous shift.  [Filing No. 330-2 at 11.]

Metal Technologies uses an electronic time clock to record the time that each employee clocks in and out.  [Filing No. 321-11 at 7.]  Employees are required to take a 30-minute unpaid lunch break, which they are instructed to clock in and out for.  [Filing No. 321-11 at 7.]  Metal Technologies does not calculate employees' pay based on their time-clock punches, but instead pays employees based on their scheduled shift times, minus an automatically deducted thirty-minute lunch break.  [Filing No. 54-1 at 9.]  So employees are typically paid for eight working hours per day.  [Filing No. 54-1 at 9.]  If an employee works more than eight hours per day, she is required to complete an Overtime Authorization Form in order to be paid for that additional time.  [Filing No. 330-1 at 10-11.]

Metal Technologies has an Employee Manual (the "Manual"), which is provided to and discussed with all new employees.  [Filing No. 330-7 at 2; Filing No. 321-1 at 108-09.]  The first page of the Manual states that "[t]he policies in this Manual are to be considered guidelines.  Metal Technologies, Inc. (MTI), at its option, may change, delete, suspend or discontinue any part or parts of the policies in this Manual at any time without prior notice. … Employees may not accrue eligibility for monetary benefits that they have not earned through actual time spent at work."  [Filing No. 330-7 at 5.]  The Manual also includes the following sections relevant to the instant motions:

### Business Hours

Our regular office hours are 7:30 a.m. to 5:00 p.m., Monday through Friday. Your particular hours of work and the scheduling of your lunch period will be determined and assigned by your Plant Manager or shift supervisor. Most employees are assigned to work a 40-hour workweek. You are required to take a 30-minute unpaid lunch period daily. Please understand that you may not "work through lunch" in order to arrive late or to leave early or to work extra time, unless approved by the Plant Manager.

[Filing No. 330-7 at 6];

### Work Schedule & Rules

The normal workweek consists of five (5) days, eight (8) hours long, Monday through Friday. You will be notified promptly whenever a change is necessary. Should you have any questions concerning your work schedule, please ask your shift supervisor or Plant Manager.

[Filing No. 330-7 at 7];

### Error in Pay

Every effort is made to avoid errors in your paycheck. If you believe an error has been made, tell accounting immediately. He or she will take the necessary steps to research the problem and to assure that any necessary corrections are made properly and promptly. We will then adjust your check the following week.

[Filing No. 330-7 at 8];

### Overtime Pay

From time to time, it may be necessary for you to perform overtime work in order to complete a job on time. The Plant Manager must approve all overtime **in advance**. When it is necessary to work overtime, you are expected to cooperate as a condition of your employment. There are two types of overtime work:

- **Scheduled Overtime:** Scheduled overtime work is announced in advance and generally will involve an entire department or operation. This type of overtime becomes part of the required workweek of the people who are members of the department or operation. If you need to be excused from performing scheduled overtime, please speak with your group leader or Shift Supervisor. He or she will consider your situation and the requirements of the department or operation in deciding whether you may be excused from performing the scheduled overtime.
- **Incidental Overtime:** Incidental overtime is not scheduled; it becomes necessary in response to extenuating circumstances. It is extra time needed to complete work normally completed during regular hours. Incidental overtime may become necessary

> when an illness or emergency keeps co-workers from being at work as anticipated. It may require you to return to the workplace for emergency work. The opportunity to perform incidental overtime will be given first to the employee who normally performs the task. If that employee cannot perform the overtime, the Plant Manager will offer the overtime to a suitably qualified person who is available to perform the overtime work.
>
> You will be paid one and one-half (1-1/2) times your regular hourly wage for any time over forty (40) hours per week that you work. If, during that week, you were away from the job because of a paid holiday or vacation taken in single-day increments those hours will be counted as hours worked for the purpose of computing eligibility for overtime pay.

[Filing No. 330-7 at 8-9];

### Time Clock Records

> By law, we are obligated to keep accurate records of the time worked by employees. This is done by either time clocks or other written documentation.
>
> Your time punch is the only way the payroll department knows how many hours you worked and how much to pay you. Your time punch indicates when you arrived and when you departed. You are to punch in and out for lunch and for brief absences like a doctor or dentist's appointment. All employees are required to keep Human Resources, their cell leader or Shift Supervisor advised of their departures from and returns to the premises during the workday.
>
> You are responsible for your time punch. Remember to record your time. If you forget to punch in or make an error on your punch, a "missed punch form" must be filled out with the Shift Supervisor or cell leader initials next to it for approval and Human Resources must be notified. Cell leader and Shift Supervisor time tickets require the Plant Manager's approval. You are not permitted to punch in more than 15 minutes before your scheduled starting time nor more than 15 minutes after your scheduled quitting time without the group leader or Shift Supervisor's approval. This would be considered unapproved overtime.
>
> No one may record hours worked on another's punch or time slip for any reason. Tampering with yours or another's time punch is cause for disciplinary action, including possible immediate dismissal, of both employees. Do not alter another person's record, or influence anyone else to alter your record for you. In the event of an error in recording your time, please report the matter to Human Resources, your group leader, or your Shift Supervisor immediately.

[Filing No. 321-11 at 7]. The Manual also outlines disciplinary policies through the use of a point system for attendance, tardiness, and early departures. [Filing No. 321-11 at 4-6.]

### B. Employee Declarations

Metal Technologies has submitted affidavits and deposition testimony from more than 20 plaintiffs attesting that although they sometimes clocked in and out before their scheduled shift times, they did not perform work-related activities during those minutes. [Filing No. 332-9.]

4

James Lynch attested, for example, that if he arrived before his scheduled start time, he would clock in and then eat breakfast in the break room. [Filing No. 332-9 at 13-14.] Alissa Murray stated that when she clocked in before her scheduled shift, she would retrieve work items from her locker and go to the break room to get a drink. [Filing No. 332-9 at 1.] Tobias Padgett attested that he spent his pre-shift clocked in time socializing and getting snacks from the vending machines. [Filing No. 332-9 at 30-31.] Jerry May stated that he clocked in immediately after arriving, and then would typically wait in the "smoke shack" or the break room "until it is time to start work." [Filing No. 330-8 at 31.] These employees all attested that they did not perform work prior to the start of their shifts, and that there was no work-related reason for them to clock in early. [Filing No. 332-1 at 1-30.] Barbara Haithcock attested that, when she arrived, there were usually at least 20 other employees waiting in the break room for their shift to start. [Filing No. 330-8 at 13.] Kirbie Conrad, Metal Technologies' Human Resources Manager, testified that she often saw numerous employees in the break room before their scheduled shifts. [Filing No. 330-7 at 1.]

Several plaintiffs also testified that they would clock out after the end of their scheduled shifts, but would not perform work-related activities. For example, Brandon Alcorn stated that he sometimes clocked out a few minutes after the end of his shift because he "lost track of time," but that he was not performing work duties. [Filing No. 332-9 at 5.] Many employees testified that if they worked beyond the end of their scheduled shift times, they submitted Overtime Authorization Forms and were compensated for that time. [Filing No. 332 at 5-28.]

### C. Work Clothing Deductions

From January 20, 2013 (two years prior to the filing of this lawsuit—the lookback period within the applicable statute of limitations) through the present, Metal Technologies took wage deductions from employees for work clothing. [Filing No. 321-1 at 78-79.] These deductions are

reflected on employees' pay stubs. [Filing No. 321-1 at 78-79.] On April 11, 2016, Metal Technologies distributed and employees signed an updated "Premiums and Deductions" form which details the clothing deduction. [Filing No. 321-5.]

### D. Procedural History

Plaintiffs filed their Complaint in this Court on January 20, 2015. [Filing No. 1.] Plaintiffs filed a Motion to Certify a Combined Class Action and FLSA Collective Action on September 1, 2015, [Filing No. 53], which this Court granted in part and denied in part, [Filing No. 79]. Following the issuance of notice, some party plaintiffs have opted in to the collective action and some potential class members have opted out of the class action. [*See, e.g.*, Filing No. 104; Filing No. 125.] The parties have also conducted discovery.

Presently pending before the Court are Cross-Motions for Partial Summary Judgment, [Filing No. 321; Filing No. 330], and Metal Technologies' Motion to Decertify Plaintiffs' Combined FLSA Collective Action and Class Action with Respect to the Pre- and Post-Shift Time Claim ("Motion to Decertify"), [Filing No. 332]. The Court addresses the pending motions in the following order: Plaintiffs' Motion for Partial Summary Judgment, Metal Technologies' Motion to Decertify, and Metal Technologies' Motion for Partial Summary Judgment.

## II.
### PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The Plaintiffs move for partial summary judgment on the issue of liability for violations of the IWPA and the FLSA, regarding both their wage deduction and timekeeping claims. [Filing No. 321.]

### A. Legal Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

as a matter of law.  *See* Fed. R. Civ. P. 56(a).  As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. P. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative.  *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003).  The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party and

draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

"The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers*, 335 F.3d 643, 647 (7th Cir. 2003). Specifically, "[p]arties have different burdens of proof with respect to particular facts; different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." *Id.* at 648.

### B. Work Clothing Deductions

Plaintiffs argue that Metal Technologies deducted money from employees' paychecks to cover the cost of work clothing in violation of the Indiana Wage Assignment Act, I.C. § 22-2-6-2, and the Indiana Wage Payment Act, I.C. § 22-2-5. [Filing No. 322 at 12.] Plaintiffs contend that under the pre-July 1, 2015 version of the Wage Assignment Act, a wage deduction for the purpose of uniform rental or work clothing was not one of the permitted purposes for a wage assignment, and therefore the wage deduction was improper. *See* I.C. § 22-2-6-2(b) (amended 2015); [Filing

No. 322 at 14]. They argue that even after the statute was amended to add permissible deductions for the "purchase" of uniforms, Metal Technologies did not secure a valid wage assignment from its employees. [Filing No. 322 at 14.]

Metal Technologies does not dispute liability for deductions taken between January 20, 2013 and April 10, 2016. [Filing No. 331 at 19.] But it does dispute liability for deductions taken after April 10, 2016, arguing that it secured valid wage assignments from employees after it implemented an amended work clothing deduction form on April 11, 2016. [Filing No. 331 at 19.] In reply, Plaintiffs argue that the newly distributed uniform deduction form is deficient, because it does not indicate that it has been agreed to, in writing, by the employer. [Filing No. 341 at 14.]

Indiana Code Section 22-2-6-2 governs the requirements for the assignment of wages. Section 22-2-6-2(a) requires that the assignment be (1) in writing; (2) signed by the employee personally; (3) by its terms revocable at any time by the employee upon written notice to the employer; and (4) agreed to in writing by the employer. I.C. § 22-2-6-2(a)(1). Subsection (a) also requires that the assignment be made for a purpose enumerated in subsection (b). I.C. § 22-2-6-2(a)(3). Prior to July 1, 2015, subsection (b) listed 13 permissible deduction purposes, which did not include the purchase of uniforms. The amended version of the statute, in effect from July 1, 2015, adds several permissible purposes, including "[t]he purchase of uniforms and equipment necessary to fulfill the duties of employment…." I.C. § 22-2-6-2(b)(14). Indiana Code Section 22-2-5-1 requires that "every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee." I.C. § 22-2-5-1(a).

Metal Technologies concedes that it improperly deducted funds for work clothing from employees' paychecks from January 20, 2013 through April 10, 2016, under both the prior and amended versions of I.C. § 22-2-6-2. [Filing No. 331 at 19.] Accordingly, the Court concludes that Metal Technologies is liable under I.C. § 22-2-6-2 for work clothing deductions taken between January 20, 2013 and April 10, 2016.

Metal Technologies contests liability, however, for the period after April 10, 2016, when it distributed a new uniform deduction form. Plaintiffs contend that because the form circulated by Metal Technologies does not include an employer signature line or other written indication of employer agreement, such as "a legend on the wage assignment form saying something such as 'agreed to in writing by Metal Technologies, Inc.,'" [Filing No. 341 at 13], the new form does not satisfy the statutory requirement that the wage assignment be "agreed to in writing by the employer." I.C. § 22-2-6-2(a)(1).

The Court concludes that the form at issue could be construed to satisfy the "agreement in writing" requirement of I.C. § 22-2-6-2(a)(1)(D). First, Metal Technologies generated and distributed the writing—*i.e.*, it created the form that describes and memorializes the wage assignment between the employer and employee. Second, Metal Technologies received and maintained the form in its files. Third, the form affirmatively describes the wage assignment's terms, which Metal Technologies proposed and carried out following the form's execution by deducting the wages at issue. Under these circumstances, the Court can, at a minimum, infer Metal Technologies' agreement in writing to the wage assignment from the written assignment form. The Court therefore denies Plaintiffs' Motion for Partial Summary Judgment as to liability for uniform deductions occurring after April 10, 2016.

For the reasons described above, the Court grants Plaintiffs' Motion as to liability on the wage deduction claim, but only as to the period from January 20, 2013 through April 10, 2016. The Court denies Plaintiffs' Motion as to liability for the remainder of the claim period.

### C. Timekeeping Practices: Early and Late Time Punches

Plaintiffs allege that Metal Technologies has failed to pay them wages that they are due as a result of an "illegal rounding scheme" in Metal Technologies' timekeeping practices. Plaintiffs contend that Metal Technologies failed to adequately compensate them, because they were paid only for their scheduled shift hours, and not the hours actually indicated by their clock-in and clock-out times. Plaintiffs argue that this rounding scheme constitutes a *per se* violation of the FLSA, because it resulted in Plaintiffs' hours being rounded down, always in favor of Metal Technologies. Therefore, Plaintiffs argue, they are entitled to summary judgment as to liability under the FLSA and IWPA.

Plaintiffs argue that, for four reasons, Metal Technologies cannot escape a finding of liability. First, Plaintiffs contend that, as a matter of law, time clock records constitute records of work actually performed. [Filing No. 341 at 18.] Second, Plaintiffs contend that Metal Technologies' recordkeeping practices violate the FLSA, and therefore the Court should accept the time clock records as reflecting hours actually worked. [Filing No. 322 at 21-23.] Third, Plaintiffs argue that Metal Technologies has not presented evidence to rebut or contradict Plaintiffs' evidence of unpaid wages, and that Metal Technologies has made admissions that establish beyond dispute all of the elements of liability. [Filing No. 322 at 28-35.] And fourth, Plaintiffs contend that Metal Technologies has a private agreement with its employees that it would pay them based on the times reflected by their clock-ins and clock-outs, and the Court should enforce that agreement. [Filing No. 322 at 25-28.] The Court addresses each argument in turn.

*1. Whether Time Clock Records Necessarily Indicate Work Actually Performed*

Plaintiffs argue that "[a]ny employer who creates a rounding scheme, policy or practice that consistently results in the rounding down of hours and underpayment of wages commits a *per se* violation of the FLSA." [Filing No. 322 at 17.] Metal Technologies does not dispute that *per se* violations can occur, but it argues that a rounding scheme is only improper if it rounds *working time*, and if that rounding results in the failure to compensate employees for hours actually worked. [Filing No. 331 at 22.] Metal Technologies argues that Plaintiffs have not established that they were actually working during the beyond-shift times for which they were clocked in, and therefore that they have not established any wage violation. [Filing No. 331 at 22-25.] Metal Technologies contends that Plaintiffs may not simply rely on employees' time sheets to establish hours worked. [Filing No. 331 at 22.] Plaintiffs appear to acknowledge that they are only due compensation for time actually worked. [Filing No. 341 at 15 ("Plaintiffs are only seeking wages for hours that each class member actually worked and reported in Metal Technologies' own timekeeping system…").] But they also assert that time clock records necessarily reflect time spent actually working. [Filing No. 341 at 18.]

Therefore, the threshold issue is Plaintiffs' contention that "[t]ime clock records are records of **work**. This is true under the law." [Filing No. 341 at 18 (emphasis in original) (citing 29 C.F.R. § 516.2(a)(7)-(9); *Solis v. A-1 Mortg. Corp.*, 934 F. Supp. 2d 778, 806 (W.D. Pa. 2013)).] While Plaintiffs never address the effect of 29 C.F.R. § 785.48(a), cited by Metal Technologies, it bears directly on Plaintiffs' contention that "time clock records are records of **work**." [Filing No. 341 at 18.] The regulation provides that:

> [t]ime clocks are not required. In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work. Their early or late clock punching may be

disregarded.  Minor differences between the clock records and actual hours worked cannot ordinarily be avoided, but major discrepancies should be discouraged since they raise a doubt as to the accuracy of the records of the hours actually worked.

29 C.F.R. § 785.48(a).  This regulation specifically contemplates circumstances in which there may be a difference between time clock records and actual hours worked, and it belies Plaintiffs' contention that "time clock records are records of work."  Setting aside the fact that Plaintiffs cite only to an out-of-circuit district court case in support of their proposition, the Court does not find any statement in that case supporting Plaintiffs' contention that time clock records necessarily equate to hours actually worked.  *See also, Kellar v. Summit Seating Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) (employees who clock in early do not have to be paid so long as they are not working).

Moreover, adopting the rule suggested by Plaintiffs would effectively eliminate any statutory constraint as to what constitutes compensable time under the FLSA.  If an employee could establish liability based solely on the hours noted on a time card, he would be under no burden to prove that he performed compensable activities during the time at issue.  The Court cannot conclude that the FLSA contemplates such a result, particularly in light of 29 U.S.C. § 251 (the "Portal-to-Portal Act"), along with numerous Supreme Court cases determining which preliminary and postliminary activities are compensable.  *See* 29 U.S.C. § 251; *see, e.g., IBP, Inc. v. Alvarez*, 546 U.S. 21, 30 (2005) (concluding that time spent walking between the locker room and the production area after donning protective gear is compensable work under the FLSA).

The Court, therefore, cannot conclude that time clock records alone necessarily establish the hours actually worked by employees.  While Plaintiffs contend that the time and payroll records alone establish their entitlement to summary judgment, the Court does not agree.  And, as discussed in more detail below, the Court concludes that the time records in this case are, in any event, not a reliable measure of hours worked.  Metal Technologies points to numerous employee declarations attesting to the fact that employees clocked in prior to their shift start times and after their shift

end times, but were not performing work. At the summary judgment stage, the Court is required to view the facts in the light most favorable to the non-moving party, Metal Technologies, and it credits the well-supported factual contentions made by them.

*2. Recordkeeping Violation*

Plaintiffs argue that the FLSA's recordkeeping rules dictate that they must be granted summary judgment on the issue of liability. [Filing No. 322 at 21.] Plaintiffs contend that because they have relied on Metal Technologies' own timekeeping and payroll records as evidence of the alleged FLSA violation, "[t]his should be the end of the records review and the records permit Plaintiffs to prove unpaid wages owed to the entire class." [Filing No. 322 at 23.] To the extent that Metal Technologies claims that its timekeeping records are inaccurate or incomplete, Plaintiffs argue, the Court must accept Plaintiffs' time sheet entries as the only possible evidence of hours "worked," because Metal Technologies has not designated any other records to rebut the timesheets. [Filing No. 322 at 22.]

Metal Technologies responds that it disputes the contention that it did not maintain accurate records. [Filing No. 331 at 32.] First, it contends that 29 C.F.R. § 785.48(a) establishes that employers may properly disregard pre- and post-shift time punches if employees voluntarily come in early or stay late and are not performing any work during those times. [Filing No. 331 at 32.] Therefore, Metal Technologies argues, there was nothing "inaccurate" about it disregarding those time punches and paying employees based on their scheduled shifts. [Filing No. 331 at 32.] But, Metal Technologies argues, even if it had failed in its recordkeeping obligations, Plaintiffs are still required to provide some evidence that they performed work for which they were not compensated, which they have not done. [Filing No. 331 at 32-37.]

The Court agrees with Metal Technologies that Plaintiffs have not established that Metal Technologies committed a recordkeeping violation. For the reasons previously described, 29 C.F.R. § 785.48(a) establishes that employers may properly disregard pre- and post-shift time punches when employees come in voluntarily before their regular start time, or remain voluntarily after their end time. The Employee Manual explicitly permits employees to clock in up to fifteen minutes before the start of their shift and clock out up to fifteen minutes after, [Filing No. 321-11 at 7], which could constitute the sort of "minor discrepancy" between time clock records and hours worked contemplated by 29 C.F.R. § 785.48(a).

But, even if the Court were to conclude that Metal Technologies failed to keep adequate records, it still could not reach the conclusion suggested by Plaintiffs. The Court begins with the Supreme Court's directive in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016):

> [t]he Court in *Mt. Clemens* held that when employers violate their statutory duty to keep proper records, and employees thereby have no way to establish the time spent doing uncompensated work, the 'remedial nature of [the FLSA] and the great public policy which it embodies ... militate against making' the burden of proving uncompensated work 'an impossible hurdle for the employee.' *Anderson v. Mt. Clemens Pottery Company,* 328 U.S. 680, 687 (1946). Instead of punishing 'the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work,' the Court held 'an employee has carried out his burden *if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.*' *Id.* at 687. Under these circumstances, '[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.' *Id.* at 687-688.

*Tyson*, 136 S. Ct. at 1047 (emphasis in original). Plaintiffs state that to satisfy this burden, they "again simply present the Court with Metal Technologies' own time records and corresponding payroll records which, on their face, provide the best and only available evidence of each day that the Plaintiff worked, and each work start time and work end time on each day." [Filing No. 322 at 23.]

But again, as the Court has already detailed, the mere clock-in and clock-out records are insufficient to establish that Plaintiffs *were actually working* while clocked in early or late, and therefore that there was any work time for which they were not compensated. Plaintiffs are correct that, if they were actually working during the times represented by the time clock entries, those records would be the best and most reliable evidence of that time. However, Plaintiffs have very notably failed to point to any evidence that a single Plaintiff-employee was actually working during beyond-shift time clock entries.

Contrary to the assertion Plaintiffs appear to make, they do not necessarily need documentary evidence created or maintained by Metal Technologies in order to establish that employees were working during beyond-shift clock-ins. Plaintiffs could, for example, provide deposition testimony or affidavits from employees attesting to the fact that they worked during even some of their early clock-ins or late clock-outs.[1] The Court is perplexed by Plaintiffs' statement that testimony from class members would "have little, if any, probative value," on this issue. [Filing No. 341 at 21.] Plaintiffs seem to conflate two related but distinct elements: the first is whether Plaintiffs can allege with evidentiary support that *at any time* they worked while clocked in beyond their shift hours (excluding approved overtime). If they did, the second issue becomes quantifying that work. While Plaintiffs may be correct that they would be unable to recall with specificity the dates and times that they performed after-hours work, they have failed to provide any evidence as to the first and critical element—that they *ever* performed work while clocked in beyond their shifts.

---

[1] The plaintiffs in *Schneider v. Union Hospital, Inc.*, 2016 WL 6037085, *4 (S.D. Ind. 2016), for example, testified that they punched in at the beginning of their shifts and immediately started working, and the Court credited that testimony. That type of evidence is lacking here.

Moreover, as described above, Metal Technologies has presented evidence in the form of employee declarations that many employees did not perform work during pre-shift clock-ins. Metal Technologies also argues that production line employees would not have been able to begin performing work before their scheduled clock-in times, because they were relieving other employees on the production line, who would not yet have vacated their stations. [Filing No. 330-2 at 11.] Plaintiffs have pointed to no evidence to dispute these factual assertions.

Plaintiffs argue, in effect, that they need not produce evidence that any Plaintiffs were actually working before or after their scheduled shifts in order to be entitled to summary judgment on the issue of liability. They contend that Ms. Conrad's deposition testimony by itself establishes that there is no genuine dispute of material fact regarding whether Metal Technologies engaged in illegal rounding. The Plaintiffs argue that Ms. Conrad's testimony proves, among other things, that:

- the payroll department reviewed each employee's time record every week, and that Ms. Conrad could see time punches and determine the actual hours of work reported, [Filing No. 322 at 18 (citing Filing No. 321-1 at 30-31)];

- the time records that showed each employee's actual time in and actual time out were the best evidence of time worked and the only evidence of time worked available in the case, [Filing No. 322 at 18 (citing Filing No. 321-1 at 60-63)];

- Metal Technologies had no other type of time records, [Filing No. 322 at 18 (citing Filing No. 321-1 at 60-63)];

First, Metal Technologies disputes Plaintiffs' characterizations of Ms. Conrad's testimony, and the Court agrees that this testimony does not establish Plaintiffs' entitlement to summary judgment. Ms. Conrad did testify that she reviewed each employee's time card reports, but she did not testify that she could determine the actual hours of work performed by each employee based on the time cards. [*See* Filing No. 321-1 at 30.] Ms. Conrad testified that employees were paid based on their shift times, and that employees "can clock in whenever they want, but based

off hours worked, we paid off of that." [Filing No. 321-1 at 43.] Ms. Conrad also testified that the Employee Manual states the employee shift times, and also specifies that employees can "clock in 15 minutes early." [Filing No. 321-1 at 65.] This testimony suggests that Ms. Conrad did not consider the time cards to automatically reflect the actual hours worked by each employee.

Likewise, Ms. Conrad did not testify that "Metal Technologies had no other type of time records," as asserted by Plaintiffs. [Filing No. 322 at 18.] Ms. Conrad testified that employees filled out overtime authorization forms in order to be paid for approved overtime and submitted "missed punch forms" in the event that they did not clock in or out properly. [Filing No. 321-1 at 57.] Ms. Conrad testified that she received, on average, 50 to 75 of these forms per week, and she would review them in conjunction with the time card reports in order to enter an employee's hours for payroll purposes. [Filing No. 321-1 at 59.] This testimony makes clear that multiple types of timekeeping records exist and were utilized by Metal Technologies.

Again, Plaintiffs' argument is in essence that the Court must consider the time and payroll records as the only (and dispositive) evidence of a wage violation. But the Court cannot conclude that Metal Technologies committed a recordkeeping violation. Nor can it conclude that the remedy for that violation, if one occurred, is the conclusion that the time clock and payroll records alone establish that Plaintiffs performed work for which they were not compensated.

*3. Contrary Evidence and Admissions*

Plaintiffs argue that Metal Technologies has not presented evidence to rebut or contradict Plaintiffs' evidence of unpaid wages, and also that Metal Technologies has made admissions that establish beyond dispute all of the elements of liability. [Filing No. 322 at 28-35.]

As to the "unrebutted" evidence of unpaid wages, the Court addresses this contention succinctly, because Plaintiffs' argument again largely depends on their contention that the time

card and payroll records alone establish that Metal Technologies failed to pay Plaintiffs owed wages. As described in detail above, those records do not establish the key element that Plaintiffs actually worked during the hours represented on the time cards. And because Plaintiffs have failed to submit any evidence on that point, there is nothing for Metal Technologies to rebut.

Plaintiffs argue that Ms. Conrad testified that she had no evidence that any employee was ever disciplined for clocking in but failing to start work, and from that, the Court should infer that employees must have been working during those early and late clock-in times. [Filing No. 322 at 30-31.] The Court declines to do so, because Metal Technologies has presented evidence directly rebutting this inference: namely, that Ms. Conrad also testified that the Manual indicated that employees could clock in and out up to fifteen minutes early or late. Under those circumstances, Ms. Conrad would have had no reason to discipline employees.

As to Metal Technologies' "admissions," the Court addressed many of these above. The Court notes, however, that Plaintiffs consistently overstate the purported admissions made by Metal Technologies and identify facts as undisputed when Metal Technologies clearly disputes them. For example, under the heading "Areas of Agreement" in Plaintiffs' reply brief, one subheading is entitled, "No One Is Fighting Over Math – Metal Technologies Does Not Dispute That a Comparison of Class Members' Time Records To Corresponding Pay Roll Records Reveals a Significant Underpayment of Wages on a Class-Wide Basis." [Filing No. 341 at 16.] Metal Technologies, however, disputes that statement in its entirety. As described at length above, Metal Technologies argues that a comparison of the time and corresponding payroll records does not reveal an underpayment of wages, because the time records do not reflect the hours actually worked by employees.

For these reasons, the Court cannot conclude that Metal Technologies has failed to rebut or has admitted Plaintiffs' contentions.

*4. Compensation Agreement*

Plaintiffs argue that Metal Technologies established a compensation agreement via its Employee Manual to pay employees based on their clock-in and clock-out times, and that this agreement should be enforced by this Court pursuant to the FLSA. [Filing No. 322 at 25-28.] Plaintiffs argue that the following statement from the Manual establishes an agreement to pay employees for all hours clocked in, regardless of whether employees were working: "[y]our time punch is the only way the payroll department knows how many hours you worked and how much to pay you." [Filing No. 322 at 25.] From this, Plaintiffs argue that "[i]n so doing, Metal Technologies defined 'hours worked' for itself and its employees. Compensable work time began with a time punch and ended with a time punch out." [Filing No. 322 at 25.] Metal Technologies responds that it did not ever make an agreement to pay employees for time not spent working, and that the FLSA cannot be interpreted to require payment for such time. [Filing No. 331 at 37-43.]

Setting aside the issue of whether the Manual constitutes any type of employment agreement, Plaintiffs fail to point out the other portions of the Manual that contradict their interpretation of the one cited sentence. For example, the Manual specifies that employees may clock in and out up to fifteen minutes before or after their shifts. Metal Technologies argues, and the Court agrees, that Plaintiffs' interpretation would create the highly unusual arrangement that Metal Technologies offered to pay employees for up to 30 minutes per day of time not spent working, but spent eating breakfast, drinking coffee, or chatting with coworkers. The Manual also specifies that the normal workweek is 40 hours long, and that normal shifts are eight hours long. It also states that all overtime pay must be approved in advance, and employees attested to being

aware that they must complete an overtime authorization form in order to be compensated for work beyond 40 hours per week.  [Filing No. 330-7 at 8-9; Filing No. 330-7 at 1; Filing No. 330-8 at 2.] These overtime provisions are inconsistent with Plaintiffs' interpretation: under their reading, employees could amass 2.5 hours of time above 40 hours per week, again, engaging in non-work activities, which the employer would be required to pay without prior approval or the use of an overtime authorization form.

The Court cannot conclude as a matter of law that the cited portions of the Manual establish an agreement for Metal Technologies to pay employees for all time spent clocked in, regardless of whether they were working.

### D. Timekeeping Practices: Lunch Breaks

The Court addresses separately Plaintiffs' allegations regarding time-rounding practices surrounding meal breaks.  In their brief in support of their Motion to Certify, Plaintiffs sought to certify a class/collective of those who were not paid for lunch breaks that lasted 20 minutes or less. [Filing No. 54 at 20.]  This Court denied Plaintiffs' Motion with regard to those unpaid breaks, because it concluded that neither of the named Plaintiffs alleged that they ever took a lunch break of 20 minutes or less, and therefore they did not demonstrate that they were harmed by the allegedly offending policy.  *Weil v. Metal Technologies, Inc.,* 2016 WL 286396 (S.D. Ind. 2016). A group of plaintiffs represented by the same counsel then filed a separate lawsuit, *Fannie M. Kolish v. Metal Technologies, Inc.*, Case No. 2:16-cv-00145-JMS-MJD, involving meal breaks lasting 20 minutes or less.

In this Motion, Plaintiffs allege that, just as Metal Technologies engaged in illegal rounding by failing to pay employees for pre- and post-shift clock-ins, it also engaged in illegal rounding by automatically deducting 30 minutes for meal breaks, even if employees took less time for meals.

[Filing No. 341 at 32-33.] Metal Technologies responds that Plaintiffs' lunch break-related rounding claims are foreclosed by this Court's prior ruling on the class/collective certification, and that any lunch break rounding claims were not included in the Court's certification. [Filing No. 331 at 26-27.] Plaintiffs reply that this claim is distinct from the unpaid meals claim being raised in *Kolish* and is instead a subset of the overall illegal rounding claim discussed above.

Plaintiffs state unequivocally in their reply brief here that the lunch-related rounding claim does not involve instances in which employees took a lunch break of 20 minutes or less, which are the purported "unpaid" lunch breaks covered instead by *Kolish*.[2] [Filing No. 341 at 32.] Therefore, while the Plaintiffs do not explicitly state this, the only possible meal-time rounding encompassed by this case involves lunch breaks that lasted 21 to 29 minutes, but which were "rounded up" to 30 minutes by Metal Technologies.

At the certification stage, Plaintiffs' briefing regarding lunch breaks focused almost exclusively on the zero to twenty-minute, unpaid lunch claims. Plaintiffs' explanation regarding any rounding issues was minimal, and they never explicitly defined what constituted lunch break rounding, once the unpaid 20-minute lunch claims were carved out. Plaintiffs did make one reference to the rounding claim at the certification stage. They specifically listed the lunch-related rounding alongside the shift start and end time rounding in the factual summary of their brief in support of their Motion for Certification. [Filing No. 54 at 5 ("Metal Technologies disregards the actual times an employee records his/her lunch (time clocked out until time clocked back in) and

_____

[2] Plaintiffs' instant briefing, however, does not always maintain the clear separation between the unpaid meal breaks claim raised in *Kolish* and the alleged rounding at issue here. For example, in their brief in support of summary judgment, Plaintiffs state that Ms. Conrad admitted to rounding time records in Metal Technologies' favor by deducting 30 minutes from employees' paid work days when the employees' lunch breaks were 20 minutes or less. [Filing No. 322 at 7.]

rounds the recorded lunch time up (in Metal Technologies' favor) and treats the employee as though he/she got to take a full thirty (30) minute, unpaid lunch break.")]. The Court's certification order did not specifically exclude those rounding claims from the certified collective and classes, so the Court concludes that those alleged violations (21 to 29 minutes "rounded" to 30) are contained within the class certified by the Court.

During the pendency of this Motion, the Court denied Plaintiffs' Motion to Certify filed in *Kolish*.[3] In that case, as here, Plaintiffs rely on time and payroll records to support their claim. The Court concluded that the time records concerning Plaintiffs' lunch clock-ins and clock-outs were not sufficiently reliable to establish Plaintiffs' actual lunch breaks. *Kolish v. Metal Technologies*, 2017 WL 525695, *7 (S.D. Ind. 2017). For example, the records indicate that named Plaintiff Fannie Kolish clocked out and back in for lunch during the same minute on 88 different occasions. [*Kolish v. Metal Technologies*, Filing No. 54-5 at 11.] In her deposition, Ms. Kolish could not explain why she would have clocked out and back in within one minute. [*Kolish v. Metal Technologies*, Filing No. 54-5 at 11.] The same records are at issue here, and the Court cannot ignore the evidentiary deficiencies identified in that case, involving significantly overlapping plaintiffs and the same defendant.

But even setting aside the evidentiary issues, Plaintiffs do not address the fact that Ms. Conrad's testimony (the only evidentiary support they cite aside from timekeeping and payroll records) does not establish that any lunch-related rounding was non-neutral. Ms. Conrad testified repeatedly that Metal Technologies always automatically deducts 30 minutes for lunch, and Plaintiffs cite no testimony or other evidence stating that employees who took *longer than* 30

---

[3] *Kolish* and *Weil* are consolidated pursuant to Fed. R. Civ. P. 42(a) for discovery purposes, and the Court cites to record evidence from *Kolish* where relevant. [Filing No. 317 at 1.]

minutes for lunch did not receive the benefit of having their time rounded down to 30 minutes. The testimony cited by Plaintiffs, in fact, involves only lunch breaks lasting twenty minutes or less. [See Filing No. 321-1 at 67-70.] For all of these reasons, as with the other elements of its illegal rounding claim, Plaintiffs are not entitled to summary judgment on this issue.

For the reasons discussed above, the Court concludes that genuine disputes of material fact exist regarding the issue of liability on Plaintiffs' FLSA and IWPA claims, and therefore Plaintiffs' Motion for Partial Summary Judgment is denied.

### III.
### METAL TECHNOLOGIES' MOTION FOR DECERTIFICATION

The Court turns next to Metal Technologies' Motion to Decertify. This Court conditionally certified one sub-class under the FLSA and certified two sub-classes under Rule 23 and the IWPA. [Filing No. 79 at 34.] Metal Technologies moves to decertify the following subclasses under the FLSA and IWPA, respectively:

- Present and former hourly paid Metal Technologies employees who worked at any time from January 20, 2012 to the present and who, as shown by Metal Technologies' time and pay roll records, were not timely paid regular wages or overtime compensation on one or more occasion for time worked; and

- Hourly paid employees from Metal Technologies who presently work there or voluntarily terminated their employment, who worked at any time from January 20, 2013 to the present and who, as shown by Metal Technologies' time and pay roll records, were not timely paid regular wages on one or more occasion for time worked.

[Filing No. 333 at 2, citing *Weil v. Metal Technologies, Inc.,* 2016 WL 286396 (S.D. Ind. 2016).] Plaintiffs oppose decertification. [Filing No. 345.]

### A. Standard of Review

An employee may only bring a collective action on behalf of other employees who are similarly situated. 29 U.S.C. § 216(b). Therefore, to decide whether to initially certify a collective

action, the Court must determine whether members of the proposed class are, in fact, similarly situated. *Campbell v. Advantage Sales & Mktg., LLC*, 2010 WL 3326752, *3-4 (S.D. Ind. 2010). Courts within this Circuit typically use a two-step inquiry. *Scott v. NOW Courier, Inc.*, 2012 WL 1072751, *7 (S.D. Ind. 2012); *Lallathin v. Ro Ro Inc.*, 2010 WL 2640271, *1 (S.D. Ind. 2010). The first step, also known as the notice stage, involves analysis of the pleadings and affidavits that have been submitted to determine whether notice should be given to potential class members. *Campbell*, 2010 WL 3326752 at *3. This first step imposes a relatively low burden on Plaintiffs.

The second step of certification occurs after discovery has been largely completed and allows a defendant the opportunity to seek decertification of the class or restrict the class because various putative class members are not, in fact, similarly situated as required by the FLSA. *Id.* at *3. Under this more stringent inquiry, courts typically consider the following factors: "(1) whether plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Threatt v. CRF First Choice, Inc.*, 2006 WL 2054372, *5 (N.D. Ind. 2006). Plaintiffs bear the burden of showing that they are similarly situated. *Crawford v. Prof'l Transportation, Inc.*, 2017 WL 1077660, at *5 (S.D. Ind. Mar. 22, 2017). At this stage of the collective action inquiry, Plaintiffs must "demonstrate similarity beyond simply claiming that the FLSA has been violated." *Creal v. Grp. O, Inc.*, 155 F. Supp. 3d 831, 836-37 (N.D. Ill. 2016). Instead, Plaintiffs must show "an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation." *Id.*

As for a Rule 23 class certification, "the judge remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of SW v. Falcon,* 457 U.S. 147, 160 (1982). That includes the ability to decertify a class should circumstances so dictate. *Eggleston*

*v. Chic. Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir. 1981). The Court also notes the Seventh Circuit's guidance in a case involving the appeal of a decertification that

> …despite the difference between a collective action and a class action and the absence from the collective-action section of the Fair Labor Standards Act of the kind of detailed procedural provisions found in Rule 23, there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences.

*Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) (citations omitted).

## B. Discussion

Metal Technologies argues that the FLSA and IWPA classes involving the alleged rounding violations should be decertified. [Filing No. 333 at 21.] Metal Technologies contends that Plaintiffs have not established that they are similarly situated, because they have not shown that they were all victims of a common policy or practice that resulted in unpaid wages. [Filing No. 333 at 22-26.] Metal Technologies also argues that at least one of its available defenses would be difficult to prove on a representational basis, weighing in favor of decertification. [Filing No. 333 at 30-32.] And Metal Technologies contends that judicial economy would not be advanced by proceeding to trial on a class-wide basis. [Filing No. 333 at 32-33.]

Plaintiffs respond that a motion to decertify is essentially a motion to reconsider. [Filing No. 345 at 14.] Plaintiffs argue that because significant discovery had already been conducted prior to the Court's certification, no circumstances have changed, and therefore decertification is not warranted. [Filing No. 345 at 15.] Plaintiffs contend that they have demonstrated that they are similarly situated, in that the time card and payroll records establish that Metal Technologies rounded Plaintiffs' time, resulting in the underpayment of wages. [Filing No. 345 at 18-30.]

First, the Court disagrees with Plaintiffs' contention that a decertification motion is "essentially" a motion to reconsider. Regarding certification of a collective action, the decision to initially certify a class is explicitly conditional, and it imposes a relatively low burden on Plaintiffs. *See, e.g., Scott,* 2012 WL 1072751 at \*7; *Lallathin,* 2010 WL 2640271 at \*1. After discovery has been largely completed, the Court then engages in the more stringent second step of the certification inquiry. This well-established standard does not equate to a motion to reconsider. As for the Rule 23 class certification, "the judge remains free to modify it in the light of subsequent developments in the litigation." *Falcon,* 457 U.S. at 160.

Metal Technologies argues that all of the factors typically considered by the court weigh in favor of decertification. The crux of its argument for decertification is the same as its argument in opposition to Plaintiffs' Motion for Summary Judgment: Plaintiffs have not shown that they were subject to a common wage violation, because they have not shown that they, as a class or individually, were *working* during pre- and post-shift clock-ins.[4] [Filing No. 333 at 21-30.] Therefore, Plaintiffs have not shown that they were similarly situated, or that they have suffered a wage violation at all. Plaintiffs respond by reiterating the same arguments raised in their Motion for Summary Judgment—that the time and payroll records show a rounding policy that resulted in the underpayment of wages.

As the parties' arguments regarding decertification track their summary judgment arguments, the Court need not repeat them, or its own analysis. For the same reasons detailed above regarding the denial of summary judgment, the Court concludes that Plaintiffs have not demonstrated adequate similarity to support class certification. The "glue" necessary to bind

---

[4] Nor have Plaintiffs shown, for that matter, that they were actually working during the 21-29 minute lunch break period shown on certain time records.

Plaintiffs' claims together is, at a minimum, the contention that their time records establish that they performed work for which they were not compensated. Without that, Plaintiffs lack both a theory of liability and proof of any injury. Even the named Plaintiffs have failed to allege that they performed uncompensated work during early and late clock-ins and clock-outs—let alone that other Plaintiffs are similarly situated. As the Court has already concluded, simply pointing to employees' time and payroll records does not establish a *per se* violation of the FLSA and IWPA.

The Court therefore grants Metal Technologies' Motion to Decertify.

## IV.
### METAL TECHNOLOGIES' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Metal Technologies has cross-moved for partial summary judgment on the pre-shift time claims of several class members, and on two damages issues.

Regarding the pre-shift time claims, "when a collective action is decertified, it reverts to one or more individual actions on behalf of the named plaintiffs, which is just what happens when a Rule 23 class is decertified: the unnamed class members go poof and the named plaintiffs' claims revert to being individual claims." *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 877 (7th Cir. 2012). In other words, the class no longer exists, and the named Plaintiffs' claims now proceed as individual actions against Metal Technologies. Because Metal Technologies does not seek summary judgment regarding either of the named Plaintiffs, their Motion for Partial Summary Judgment is rendered moot by the Court's grant of decertification.

Regarding the damages issues, Metal Technologies argues that the expert relied upon by Plaintiffs erred (1) in calculating damages at the overtime rate under the IWPA, when Plaintiffs specifically disclaim overtime claims and seek "straight-time" compensation; and (2) in erroneously calculating straight-time damages. [Filing No. 331 at 50.] Metal Technologies asks the Court to make several findings related to specific aspects of the expert report. Because the

Court has decertified the relevant subclasses, leaving only the two named Plaintiffs to proceed, the Court questions whether the cited report will remain relevant at all. That report pertains to damages calculated on a class-wide basis for classes that no longer exist. Calculating damages for the two named Plaintiffs can perhaps be accomplished with reliance on testimonial evidence that applies specifically to them. Therefore, the Court need not make specific findings regarding the proffered expert report.

For the above reasons, the Court denies as moot Metal Technologies' Cross-Motion for Partial Summary Judgment.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Partial Summary Judgment:

- The Court **GRANTS** Plaintiffs' Motion as to liability on Plaintiffs' wage deduction claim under the IWPA, but only as to the period from January 20, 2013 through April 10, 2016. The Court **DENIES** Plaintiffs' Motion as to liability for the remainder of the claim period.

- The Court **DENIES** Plaintiffs' Motion as to liability on Plaintiffs' time-rounding claims under the FLSA and IWPA.

The Court **GRANTS** Metal Technologies' Motion to Decertify, and **DENIES AS MOOT** Metal Technologies' Motion for Partial Summary Judgment.

Date: May 26, 2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Robert Peter Kondras, Jr.
HUNT HASSLER KONDRAS & MILLER LLP
kondras@huntlawfirm.net

Robert F. Hunt
HUNT HASSLER LORENZ & KONDRAS LLP
hunt@huntlawfirm.net

Jacob H. Miller
HUNT HASSLER LORENZ KONDRAS LLP
jmiller@huntlawfirm.net

Melissa K. Taft
JACKSON LEWIS P.C. - Indianapolis
melissa.taft@jacksonlewis.com

Michael W. Padgett
JACKSON LEWIS P.C. - Indianapolis
padgettm@jacksonlewis.com

Brian D. Burbrink
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
brian.burbrink@odnss.com

Todd J. Kaiser
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
todd.kaiser@odnss.com