UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| BRIAN A. WEIL, | ) | |
| MELISSA D. FULK, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:15-cv-00016-JMS-MPB |
| | ) | |
| METAL TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Court conducted a bench trial in this action on January 30, 2018. Plaintiffs Brian Weil and Melissa Fulk (collectively "Plaintiffs") were present in person and by counsel Robert Kondras. Defendant Metal Technologies, Inc. ("Metal Technologies") was present by counsel Michael Padgett and Melissa Taft.

In their initial Complaint, [Filing No. 1], Plaintiffs alleged putative class and collective action claims for violations of the Fair Labor Standards Act ("FLSA"), the Indiana Wage Collections Act ("IWCA"), and the Indiana Wage Payment Statute ("IWPS"). Plaintiffs later filed a Motion to Certify a Combined Class Action and FLSA Collective Action, [Filing No. 53], and the operative First Amended Complaint, [Filing No. 66]. Under the FLSA, the Court conditionally certified the following sub-class:

> Present and former hourly paid Metal Technologies employees who worked at any time from January 20, 2012 to the present and who, as shown by Metal Technologies' time and pay roll records, were not timely paid regular wages or overtime compensation on one or more occasion for time worked.

[Filing No. 79 at 34]. Under Rule 23 and the IWPS, the Court certified the following two sub-classes:

1

Hourly paid employees from Metal Technologies who presently work there or voluntarily terminated their employment, who worked at any time from January 20, 2013 to the present and who, as shown by Metal Technologies' time and pay roll records, were not timely paid regular wages on one or more occasion for time worked.

Hourly paid employees from Metal Technologies who presently work there or voluntarily terminated their employment, who worked at any time from January 20, 2013 to the present and who, as shown by Metal Technologies' pay roll records, were not timely paid regular wages on one or more occasions based upon wage deductions taken by Metal Technologies to cover costs for work uniforms.

[Filing No. 79 at 34.]

The parties then filed cross-motions for partial summary judgment, [Filing No. 321, Filing No. 330], which the Court denied on all but one claim, [Filing No. 363]. The Court granted summary judgment to the Plaintiff class on a portion of the class wage deduction claims involving deductions taken for clothing rental. [Filing No. 363 at 11.] The Court granted summary judgment on the issue of liability regarding those wage deductions, but only as to the period from January 20, 2013 through April 10, 2016. [Filing No. 363 at 11.] The Court also granted Metal Technologies' Motion to Decertify two of the certified subclasses—those involving unpaid wages based on time-rounding under the FLSA and IWPS. [Filing No. 363.]

Following decertification, Mr. Weil and Ms. Fulk proceeded with their claims individually. Remaining for resolution at trial, therefore, were the following claims:

- The class damages under Ind. Code § 22-2-6-2 resulting from the unlawful wage deductions taken for clothing rental from January 20, 2013 through April 10, 2016;

- The class claim under Ind. Code § 22-2-6-2 for deductions taken for clothing rental from April 11, 2016 onward, and the amount of any resulting damages;

- Mr. Weil's individual claim under Ind. Code § 22-2-6-2 for wage deductions taken for clothing rental, and any resulting damages;

- Mr. Weil's individual claim for a one-time deduction of $63.00, notated as "OF," and any resulting damages;

- Ms. Fulk's individual claims for violation of the FLSA and the IWPS for unpaid wages, and any resulting damages; and

- Mr. Weil's individual claims for violation of the FLSA and IWCA for unpaid wages, and any resulting damages.

# I.
## FINDINGS OF FACT[1]

Metal Technologies is an automobile parts manufacturer located in Bloomfield, Indiana. Manufacturing employees work one of three shifts: first shift, from 7:00 a.m. to 3:30 p.m.; second shift, from 3:00 p.m. to 11:30 p.m.; or third shift, from 11:00 p.m. to 7:30 a.m. The shifts overlap by 30 minutes, and during that overlapping time, employees are relieved of their duties by the next shift's employees.[2] They use the remaining time to clean up their work areas and exchange information about the previous shift. At the time that Plaintiffs were employed by Metal Technologies, each shift's production supervisor held a meeting for all shift employees during the overlapping shift time.

Ms. Fulk worked for Metal Technologies from August 4, 2014 through December 31, 2014, when she voluntarily resigned her employment. Mr. Weil worked for Metal Technologies from November 5, 2014 through December 8, 2014, when his employment was involuntarily terminated.

### A. Deductions for Work Clothing

Pursuant to a wage deduction form that it distributed to its employees, from January 20, 2013 through April 10, 2016, Metal Technologies deducted wages from employees who chose to rent work clothing. Metal Technologies has conceded, and the Court has already determined as a

---

[1] Any finding of fact should be deemed a conclusion of law to the extent necessary.

[2] On weekends, employees work eight-hour shifts that do not overlap.

matter of law, that the wage deduction form did not meet the requirements of Ind. Code § 22-2-6-2, and that Metal Technologies is liable for having improperly deducted wages pursuant to that form. Under the IWPS, the Plaintiff class is due those unpaid wages.[3] Mr. Weil signed the form on November 5, 2014, and Metal Technologies deducted a total of $43.10 from his wages in increments of $8.62.

Beginning on April 11, 2016, Metal Technologies distributed a new version of the wage deduction form, still applying to voluntary deductions taken from employees' wages for the purpose of renting work clothing. That form included language stating that the wage assignment could be revoked at any time by the employee upon written notice to Metal Technologies, and it included a line for the employee's signature. Clothing rental is not required for Metal Technologies' employees, and employees are free to wear their own personal clothing on the job. Metal Technologies does not own the clothing rented by employees—rather, it contracts with an external vendor. Metal Technologies pays half of the rental cost, and deductions taken from employees cover the other half paid to the vendor. At the end of their employment, employees are required to return the rented clothing, or its full purchase price is deducted from their wages.

**B. "OF" Deduction**

Mr. Weil received a paycheck dated December 12, 2014, for the pay period covering December 1 through December 7, 2014. A $63.00 deduction notated as "OF" was taken from that paycheck. That deduction was taken for what Metal Technologies identified at trial as an "Obama Fee." Kirbie Conrad, Metal Technologies' Human Resources Manager, directed the deduction,

---

[3] The parties reached a stipulation as to the amounts unlawfully deducted from the Rule 23 class members' pay, as well as the resulting damages, which are further detailed in the Court's conclusions of law below. Ms. Fulk is a member of that plaintiff class, and the stipulation therefore encompasses her claim and the damages she is owed. Mr. Weil, however, is not a member of that class, so the Court separately addresses the amount of wages deducted from his pay.

based on vague direction from an insurer that it was for a fee pursuant to the Affordable Care Act. The Court credits Ms. Conrad's testimony that she believed the deduction to have been properly taken pursuant to the ACA.

### C. Hours Worked and Payment of Wages

Metal Technologies uses an electronic time clock to record the time that each employee clocks in and out. Ms. Conrad orally informs employees at the beginning of their employment that if they work beyond their scheduled shift time, they should complete an "overtime authorization form" in order to be paid for that time. Ms. Conrad is also responsible for administering Metal Technologies' payroll, and she reviews both employee time cards and overtime authorization forms for payroll purposes. Metal Technologies does not calculate employees' pay based on their time-clock punches, and instead pays employees based on their scheduled shift times, plus time indicated by submitted overtime authorization forms. On weekdays, a 30-minute unpaid meal break is automatically deducted from employees' time, and on weekends, employees are paid for a 20-minute meal break. Employees are paid time-and-a-half for time worked beyond a 40-hour work week, and they are paid double-time for any hours worked on a Sunday that exceed 48 hours worked that week. For third-shift employees, the seven-day pay period begins at 11:00 on Sunday evening.

#### 1. Ms. Fulk's Time Records and Work Performed

Ms. Fulk was employed by Metal Technologies from August 4, 2014 through December 31, 2014, working on the third shift. Ms. Fulk's time records reflect that she often clocked in a short time before her shift's 11:00 p.m. start time, with her clock-ins ranging from 10:10 p.m. to 10:56 p.m. Those records also reflect that Ms. Fulk occasionally clocked out shortly after her shift's 7:30 a.m. weekday end time. On weekdays, when employees were required to take a 30-

minute unpaid meal break, Ms. Fulk sometimes clocked out for meal breaks that lasted fewer than 30 minutes, or she did not clock out at all. Ms. Fulk submitted overtime authorization forms for extra minutes or hours worked on August 4, 2014; October 4, 2014; October 15, 2014; October 17, 2014; and December 20, 2014.

While this issue was vigorously disputed by the parties at trial, the Court concludes that, as to Ms. Fulk's pre- and post-shift clocked-in time, as well as missed or shortened meal breaks, Ms. Fulk did not establish by a preponderance of the evidence that she was performing work during those periods, or that if she was, Metal Technologies should have known it.

As to the pre-shift time, the evidence presented at trial does not establish that Ms. Fulk was performing work while clocked in. The Court credits the testimony of Ms. Conrad and supervisors Travis Clagg and Kyle Pollock that because shifts overlapped, there was no reason for production employees to report prior to the start of their shifts. Ms. Conrad, Mr. Clagg, Mr. Pollock, Mr. Weil, and Ms. Fulk all testified that each shift commenced with a short meeting in the breakroom for all shift employees, and the Court credits that testimony. The majority of Ms. Fulk's time-clock records indicate an initial clock-in from the breakroom, notated as "Indirect" and "Mtg" (for meeting) on the Shop-Trak time and attendance records, followed by a subsequent clock-in from the "Work Center," usually between 11:05 and 11:10 p.m. This is consistent with Ms. Fulk clocking in from the breakroom, attending the pre-shift meeting, and moving to her work station after the meeting concluded. It is not consistent with Ms. Fulk heading straight to her work station to begin work early.

The Court does not credit Ms. Fulk's testimony that during the last month (or so) of her employment (from either the end of November or the beginning of December 2014) she became an "assistant cell lead" and was required to attend pre-shift meetings once or twice per week. Ms.

Conrad, Mr. Clagg, and Mr. Pollock all testified that there was no "assistant cell lead" position at Metal Technologies, and that the meetings described by Ms. Fulk never occurred. And Ms. Fulk's time records for the relevant period do not corroborate her memory of the meetings having occurred at 10:30 p.m. once or twice per week. She clocked in at precisely 11:00 p.m. from November 15 through November 30, 2014. In December, she clocked in once prior to 10:30 p.m., at 10:10 p.m.; otherwise, her early clock-ins occurred at 10:44 p.m. and 10:43 p.m.

Regarding her post-shift time, on ten occasions during her employment, Ms. Fulk clocked out between one and eight minutes after her scheduled shift end time. As described above, the Court credits the testimony of Ms. Conrad, Mr. Clagg, and Mr. Pollock that employees were relieved of their duties by the incoming shift's employees. Therefore, absent special circumstances, the Court concludes that Ms. Fulk would have been relieved by the next shift and would not have been required to work beyond the end of her scheduled shift time. If special circumstances did require her to continue working, Ms. Fulk was aware of Metal Technologies' use of overtime authorization forms to report additional time worked. Indeed, she used this form on several occasions to report both large and small increments of overtime performed at the request of supervisors, including 15 minutes spent on clean-up duties. She did not submit overtime authorization forms for any of these ten late clock-outs.

As to meal breaks, the Court credits the testimony of Mr. Clagg and Mr. Pollock that during the relevant time period, all shift employees took their meal breaks at roughly the same time, and that during those meal breaks, the machinery would shut down and production would cease. The Court does not credit Ms. Fulk's contrary testimony. And Ms. Fulk did not testify as to any non-production work activities that she performed or was asked to perform during meal breaks. The Court also credits Mr. Pollock's testimony that employees knew that their 30-minute meal breaks

would be automatically deducted from their pay, and as a result, employees would sometimes simply skip clocking out. The evidence presented, therefore, does not establish that Ms. Fulk worked through her meal breaks on days when she did not clock out.

Ms. Fulk has established, however, that on several occasions, she was clocked in and performing work during time for which she did not receive compensation. While she was paid for some of her clocked-in time on these days, her time entries were shortened for unexplained reasons on her payroll calculations. When asked to explain why minutes were taken off of these time entries, Ms. Conrad could not, stating only that she paid employees based on their scheduled shift times. Ms. Conrad's statement provides no explanation as to why these particular time entries would have been shortened, however, because on all of these days, Ms. Fulk's time entries do not at all correspond to a regular shift period. And on all of these occasions, she was not in fact paid based on her scheduled shift time or the time reflected on her time records. The Court details those occurrences below:

- Ms. Fulk clocked in at 10:48 p.m. on August 21, 2014, and clocked out at 1:10 a.m. on August 22, 2014. As the Court described above, Ms. Fulk did not establish that she performed work prior to her scheduled shift start time. Therefore, Ms. Fulk should have been paid for two hours and ten minutes of work time on this day (11:00 p.m. through 1:10 a.m.), or 2.17 hours. Her payroll record for this pay period indicates, however, that she was paid for only 2.0 hours of work on this day.

- Ms. Fulk clocked in at 11:00 p.m. on October 1, 2014, and clocked out at 9:57 a.m. on October 2, 2014. For this day, deducting 30 minutes for an unpaid lunch break, Ms. Fulk should have been paid for 10.45 hours of work time. During that same pay period, Ms. Fulk clocked in at 11:00 p.m. on October 4, 2014, and clocked out at 10:59 a.m. on October 5, 2014. Ms. Fulk submitted an overtime authorization form for the extra hours worked on this day. As this was a weekend day, when employees received paid meal breaks, Ms. Fulk should have been paid for 11.98 hours of work that day. Including both days, her payroll record indicates that she was not paid for 2.93 hours of work during this pay period.

- Ms. Fulk clocked in at 6:48 p.m. on October 16, 2014, and clocked out at 7:30 a.m. on October 17, 2014. Ms. Fulk submitted an overtime authorization form for the extra hours worked on this day, and after deducting 30 minutes for an unpaid meal

break, she should have been paid for 12.2 working hours. Her payroll record for that pay period indicates that she was not paid for 2.2 hours of work that week.

- Ms. Fulk clocked in at 11:00 p.m. on December 24, 2014 and clocked out at 1:29 a.m. on December 25, 2014. Ms. Fulk should have been paid for two hours and 29 minutes, or 2.48 hours that day. Her payroll record for this pay period indicates, however, that she was paid only 2.25 hours for that date.

The Court credits Ms. Fulk's testimony that she was performing work during these times, and concludes that she was not compensated for the time periods indicated above.

### 2. Mr. Weil's Time Records and Work Performed

On four occasions, Mr. Weil clocked out between four and nine minutes after his scheduled shift end. And on four occasions, Mr. Weil clocked out for a meal break that lasted fewer than thirty minutes. The Court concludes that Mr. Weil has not established that he was performing work during these periods of time.

Regarding the late clock-outs, Mr. Weil did not testify that he remembered ever working beyond his scheduled shift time, or that he was ever asked to work beyond his scheduled shift time. As the Court concluded above, employees were relieved of their duties by the incoming shift's employees during a 30-minute period of overlap, so under ordinary circumstances, an employee would not be required or expected to work beyond his scheduled shift. Mr. Weil submitted one overtime authorization form to report an hour of overtime spent doing "paperwork," but he did not submit a form for any of the time indicated by his timeclock entries on the days in question.

As to the meal breaks lasting fewer than 30 minutes, Mr. Weil did not establish that he was performing work during those time periods. Mr. Weil did not testify as to any work activities that he performed or was asked to perform during his meal breaks. And as the Court described above, during the relevant time period, all shift employees took their meal breaks at the same time, at which point the machinery would shut down and production would cease.

But, as with Ms. Fulk, the Court concludes that on one occasion, Mr. Weil was clocked in and performing work for which he did not receive compensation. Mr. Weil clocked in on December 9, 2014 at 11:00 p.m. and clocked out on December 10, 2014 at 3:49 a.m. After deducting a 30-minute meal break, Mr. Weil was clocked in for 4.32 hours. His pay record for that pay period indicates that he was only paid for 4.25 hours, leaving .07 hours uncompensated.

## II.
### CONCLUSIONS OF LAW[4]

**A. Clothing Deductions: January 20, 2013 through April 10, 2016**

Regarding clothing rental wage deductions taken between January 20, 2013 and April 10, 2016, two issues remained for resolution at trial: the amount of damages for the claims raised by the Plaintiff class, and Mr. Weil's individual clothing deduction claim.

*1. Class Claim*

Pursuant to Federal Rule of Civil Procedure 23, the Court certified the following Plaintiff class:

> Hourly paid employees from Metal Technologies who presently work there or voluntarily terminated their employment, who worked at any time from January 20, 2013 to the present and who, as shown by Metal Technologies' time and pay roll records, were not timely paid regular wages on one or more occasions based upon wage deductions taken by Metal Technologies to cover costs for work uniforms.

Indiana Code Section 22-2-6-2 governs the requirements for the assignment of wages. Section 22-2-6-2(a) requires that the assignment be (1) in writing; (2) signed by the employee personally; (3) by its terms revocable at any time by the employee upon written notice to the employer; and (4) agreed to in writing by the employer. Ind. Code § 22-2-6-2(a)(1). Subsection (a) also requires that the assignment be made for a purpose enumerated in subsection (b). Ind. Code § 22-2-6-2(a)(3). As to current employees and those who voluntarily terminated their employment, the

---

[4] Any conclusion of law should be deemed a finding of fact to the extent necessary.

IWPS requires that "every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee." Ind. Code § 22-2-5-1(a).

The Plaintiff class alleges, and the Court has already determined as a matter of law, that Metal Technologies impermissibly deducted wages from the class members in violation of Indiana Code Section 22-2-6-2. At trial, the parties stipulated to the damages that Metal Technologies would pay pursuant to that statute and the IWPS. The Court accepts those stipulations, with one modification. Plaintiff Brian Weil appears to be included in the parties' stipulated damages as to this claim, with his wage deductions listed as amounting to $43.10. [*See* Filing No. 380 at 4.] As the parties have previously noted, however, Mr. Weil's employment was involuntarily terminated. As such, he is not a member of the Plaintiff class, which includes only individuals who are currently employed by Metal Technologies, or whose employment was voluntarily terminated.[5]

Therefore, the Court subtracts $43.10 from the $31,093.96 overall total of wage deductions stipulated by the parties involving the Plaintiff class, leaving $31,050.86 of improper wage deductions. The parties stipulated to the trebling of those damages, amounting to $93,152.58.

The Court, therefore, concludes that the Plaintiff class is owed **$93,152.58** in damages arising from the improper deduction of wages for clothing rental taken between January 20, 2013 and April 10, 2016.

---

[5] Mr. Weil's claim regarding clothing rental deductions is not subject to the IWPS, which applies to current employees and those employees whose employment was voluntarily terminated, but rather the IWCA, which applies to individuals whose employment was involuntarily terminated.

### *2. Mr. Weil's Individual Claim*

At trial, Metal Technologies conceded liability for Mr. Weil's clothing rental wage deduction claim. The parties stipulated that a total of $43.10 was improperly taken from Mr. Weil's wages, and that his damages should be treble this amount. The Court therefore concludes that Mr. Weil is owed **$129.30** in damages arising from the improper deduction of wages for clothing rental.

### **B. Clothing Deductions: Amended Wage Deduction Form**

As the Court described above, after distributing an amended wage deduction form, Metal Technologies continued taking wage deductions from employees who opted to rent work clothing. The Plaintiff class raises a claim that those deductions still did not meet the requirements of Indiana Code Section 22-2-6-2 and were therefore improper. Subsection (a) requires that the assignment be made for a purpose enumerated in subsection (b). Ind. Code § 22-2-6-2(a)(3). Prior to July 1, 2015, subsection (b) listed 13 permissible deduction purposes, none of which included the purchase or rental of uniforms. The amended version of the statute, in effect from July 1, 2015, adds several permissible purposes, including "[t]he purchase of uniforms and equipment necessary to fulfill the duties of employment…." Ind. Code § 22-2-6-2(b)(14).

The Court concludes that the wage deductions taken for clothing rental do not fall within one of the permissible purposes enumerated by Ind. Code § 22-2-6-2(b)(14). While the statute permits deductions for the "purchase" of uniforms, clothing rental is not included among the enumerated deduction purposes. Metal Technologies argues that the term "purchase" simply means to acquire something by paying money, and to "purchase" an item does not imply ultimate ownership of the item. Therefore, Metal Technologies argues, the terms rental and purchase are synonymous in the statute (or rental is subsumed within the term purchase), because renting also involves acquiring something by paying money.

To state it mildly, Metal Technologies' reading of the term "purchase" as being synonymous with or inclusive of "rental" strains credulity, and the Court rejects that reading of the statute. Indiana follows the familiar rules of statutory interpretation, including that a statute is given its clear and plain meaning if unambiguous. *See Basileh v. Alghusain,* 912 N.E.2d 814, 821 (Ind. 2009). In ordinary usage, the terms purchase and rental are not used synonymously. Contrary to Metal Technologies' contention, the term purchase does typically convey some sense of ownership and is used synonymously with the term "buy." Rental, on the other hand, does not imply ownership and is used to convey the use or temporary use of something in exchange for money. The statute does not list clothing "rental" as one of the permissible purposes of a wage deduction, and the Court refuses to read that term into the statute.

As such, the Court concludes that Metal Technologies' wage deductions for clothing rental were impermissible, and Metal Technologies has failed to pay wages owed to the Plaintiff class. The parties have stipulated that $8,102.04 in deductions were made pursuant to the amended wage assignment form, and the parties have stipulated that no liquidated damages should be added to this amount.

Therefore, the Court concludes that Metal Technologies' wage deduction failed to comply with Ind. Code § 22-2-6-2, and the Plaintiff class is owed **$8,102.04** in damages under the IWPS.

### C. Mr. Weil's Obama Fee Deduction

Mr. Weil alleges that the $63.00 "OF" deduction taken from his December 12, 2014 paycheck constitutes an illegal wage deduction in violation of Indiana Code Section 22-2-6-2. Metal Technologies argues that Mr. Weil's state law claim is preempted by a combination of two federal statutes—the Affordable Care Act (the "ACA") and the Employee Retirement Income

Security Act ("ERISA").  Mr. Weil responds that Metal Technologies has waived its preemption defense because it failed to raise that defense in its answer to Mr. Weil's amended complaint.

The Seventh Circuit has viewed federal preemption as an affirmative defense upon which the defendant bears the burden of proof and the burden of persuasion.  *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 309 (7th Cir. 2010).  Affirmative defenses "must ordinarily be included in the defendant's answer, but 'a delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as a result.'" *Id.* (citing *Best v. City of Portland,* 554 F.3d 698, 700 (7th Cir. 2009)).  Metal Technologies did not raise the affirmative defense in its answer.  Indeed the first time it was raised was in its Trial Brief.  The Court will therefore exercise its discretion to determine whether such harm exists.  *See id.*

Mr. Weil argues that he was harmed as a result of the late assertion of the defense.  He argues that because this defense was not listed among Metal Technologies' affirmative defenses, he conducted no specific discovery as to the preemption issue or the possible application of the ACA or ERISA.  After viewing the scant evidence presented at trial as to this issue, the Court must agree.  While the Court credits Ms. Conrad's testimony that she believed the "OF" deduction to have been taken pursuant to the ACA, Metal Technologies did not establish at trial what the "OF" deduction actually was.  Ms. Conrad was the only witness who provided evidence as to the basis for this deduction, and her vague testimony established, at best, only that (1) "OF" stands for Obama Fee; (2) the amount was deducted based on advice received by Metal Technologies' health plan administrator; and (3) Ms. Conrad believed that this payment was mandated or authorized by the ACA.  No witness from Metal Technologies' health plan administrator testified as to the purpose of that deduction, or the provision(s) of the ACA (or ERISA) under which the deduction could have been or was taken.  Metal Technologies presented no witness testimony or other

evidence as to what was done with the funds obtained via the deduction. If given the opportunity to conduct discovery as to the issue, the Court has no doubt that more evidence could have been marshalled at trial as to the details of this deduction. The Court therefore concludes that Mr. Weil was prejudiced by Metal Technologies' failure to raise the preemption affirmative defense at an earlier stage of the litigation, and therefore the preemption defense is waived.

Metal Technologies does not dispute that it took a one-time deduction in the amount of $63.00 from Mr. Weil's pay, and that deduction constitutes a wage assignment. Indiana Code Section 22-2-6-2(a) requires that a wage assignment be (1) in writing; (2) signed by the employee personally; (3) by its terms revocable at any time by the employee upon written notice to the employer; and (4) agreed to in writing by the employer. Ind. Code § 22-2-6-2(a)(1). The only wage assignment form completed by Mr. Weil does not include language stating that it was revocable at any time by the employee upon written notice to the employer. Therefore, the Court concludes that the $63.00 "OF" deduction constituted an improper wage assignment in violation of Ind. Code § 22-2-6-2, leaving Mr. Weil with $63.00 in unpaid wages.

Under the IWCA, "[w]henever any employer separates any employee from the pay-roll, the unpaid wages or compensation of such employee shall become due and payable at regular pay day for the pay period in which separation occurred." Ind. Code § 22-2-9-2(a). The statute provides that the damages provision of the IWPS applies to claims raised under the IWCA. Ind. Code § 22-2-9-4(b) ("The provisions of IC 22-2-5-2 apply to civil actions initiated under this subsection…"). That damages provision provides that:

> Every such person, firm, corporation, limited liability company, or association who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall be liable to the employee for the amount of unpaid wages, and the amount may be recovered in any court having jurisdiction of a suit to recover the amount due to the employee. …if the court in any such suit determines that the person, firm, corporation, limited liability company, or association that failed to

pay the employee as provided in section 1 of this chapter was not acting in good faith, the court shall order, as liquidated damages for the failure to pay wages, that the employee be paid an amount equal to two (2) times the amount of wages due the employee.

Ind. Code § 22-2-5-2. Mr. Weil requests liquidated damages for this claim, and therefore asks the Court to conclude that Metal Technologies did not act in good faith in taking this deduction. *See Brown v. Bucher & Christian Consulting, Inc.,* 87 N.E.3d 22, 25-27 (Ind. Ct. App. 2017) (applying current version of Ind. Code § 22-2-5-2 retroactively, imposing good-faith standard on claims predating 2015 amendment). However, the Court has already discussed the very limited evidence presented at trial regarding the nature of this deduction and the circumstances under which it was taken. The Court credits Ms. Conrad's testimony that she believed the OF deduction to have been taken pursuant to the ACA (and upon the advice of Metal Technologies' plan administrator). The vagueness of Ms. Conrad's testimony does not mean the Court finds the deduction was not in good faith, and the Court cannot conclude from that scant evidence presented that Metal Technologies failed to act in good faith when it took the subject deduction from Mr. Weil's pay.

Therefore, the Court awards Mr. Weil **$63.00** in damages as to this claim.

### D. Ms. Fulk's FLSA and IWPS Wage Claims

Ms. Fulk raises claims for unpaid wages under the FLSA and the IWPS. The FLSA applies only to the nonpayment of certain overtime wages—not the nonpayment of regular ("straight-time") or premium wages. *See Allen v. City of Chicago*, 865 F.3d 936, 938 (7th Cir. 2017), *cert. denied sub nom. Allen v. City of Chicago, Ill.*, 2018 WL 1369175 (U.S. Mar. 19, 2018) ("The Act, codified as 29 U.S.C. § 201 *et seq.*, requires employers to pay covered employees at one-and-a-half times their usual pay rate if they are employed for longer than a certain hourly threshold."). In this case, that threshold is forty hours per week. The IWPS applies to claims for "straight-time" wages. *See, e.g., Parker v. Schilli Transp.*, 686 N.E.2d 845, 851 (Ind. Ct. App. 1997) ("[I]n

Indiana, claims for overtime compensation cannot be raised under the [Indiana] Wage Law and … the [FLSA] is the exclusive remedy for enforcing rights created under that federal statute.").

The FLSA provides the following regarding an employer's payment of overtime to its employees:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a). As the Seventh Circuit has recently explained, "[t]he statute defines 'employ' broadly, as to suffer or permit to work. That broad definition is central to the purpose of the Act. It helps prevent evasion by employers who might seek to issue formal written policies limiting overtime that are widely violated, or who might deliberately close their eyes to overtime work their employees are doing." *Allen*, 865 F.3d at 938 (internal citations and quotations omitted). Indeed, "[e]mployers must, as a result, pay for all work they know about, even if they did not ask for the work, even if they did not want the work done, and even if they had a rule against doing the work. If the employer does not want to pay overtime, its management must exercise its control and see that the work is not performed." *Allen*, 865 F.3d at 938 (internal quotations and citations omitted). This rule, however, has limits. "It stops short of requiring the employer to pay for work it did not know about, and had no reason to know about. The employer's knowledge can be either actual or constructive. An employer has constructive knowledge of an employee's work if it should have acquired knowledge of that work through reasonable diligence." *Id.*

As the Court concluded in its findings of fact, Ms. Fulk performed work on several occasions for which she did not receive compensation. Metal Technologies argues that, even if

this is so, no FLSA violation occurred, because Metal Technologies did not have actual or constructive knowledge that work was being performed during those times. The Court disagrees.

The Court concludes that, as to the unpaid time detailed above, Metal Technologies either knew or should have known that Ms. Fulk was performing work. On two of these occasions, Ms. Fulk was clocked in for a period of time shorter than her scheduled shift. And while Ms. Conrad testified that she calculated employees' pay based on their shift times, Metal Technologies did not pay Ms. Fulk for her entire scheduled shift. Ms. Fulk was paid for less than a full shift. On the rest of these occasions, Ms. Fulk was performing work well beyond her scheduled shift times, but was not paid *only* for her scheduled shift.

Ms. Conrad must have used some other means to determine how much to pay Ms. Fulk, and based on the evidence presented, the Court concludes that Ms. Conrad used Ms. Fulk's time clock records and overtime authorization forms to do so.[6] Indeed, Ms. Conrad testified that she (and at one time an assistant) reviewed employee time clock records and overtime authorization forms for purposes of calculating payroll. The Seventh Circuit has concluded that an employer can exercise diligence in ensuring that work is not performed without its knowledge by instituting a formal policy or process for reporting overtime, and Metal Technologies appears to have taken the steps to do so here with the use of overtime authorization forms. *See Allen*, 865 F.3d at 938-39. But even in several instances where Ms. Fulk submitted overtime authorization forms, Metal Technologies' payroll still resulted in an underpayment of wages. The Court concludes that, under these circumstances, Ms. Fulk's time-clock records and overtime authorization forms provided

---

[6] In two of the instances at issue, Ms. Fulk submitted overtime authorization forms, but was still not paid for all of the time during which she was clocked in.

Metal Technologies with notice that Ms. Fulk was performing work during the times that she was clocked in.

Therefore, the Court must determine in each instance how much Ms. Fulk should have been paid for the uncompensated time. While Ms. Fulk has submitted several possible damages calculations, they are based upon payment for time that the Court has concluded is non-compensable—such as early clock-ins and meal breaks for which Ms. Fulk did not clock out. Therefore the Court is left only with Ms. Fulk's time-clock and weekly payroll records. Those payroll records do not, however, indicate the number of hours for which Ms. Fulk was paid on each individual day (or the applicable pay rates), making the Court's task a challenge.

As the Court concluded above, for the shift running from August 21 to August 22, 2014, Ms. Fulk was not compensated for .17 hours of work time, at a pay rate of $11.00 per hour. During that pay period, Ms. Fulk was paid for 40 regular hours and 2 overtime hours. Because her hours that week exceeded 40, the Court concludes that under the FLSA, Ms. Fulk should have been paid for those .17 hours at the time-and-a-half rate of $16.50 per hour. Ms. Fulk is owed **$2.81** for this unpaid time.

As the Court concluded above, for the pay period running from September 29 through October 4, 2014, Ms. Fulk was not compensated for 2.93 hours of work time, based on underpayment of hours on two separate days. During that pay period, she was paid for 40 regular hours, 8 time-and-a-half hours, and 8 double-time hours. Ms. Fulk's hours that week exceeded 40, so she is due some form of overtime compensation for the unpaid time. In Exhibit 3A, however, Ms. Fulk indicates that all of her claimed FLSA damages (which claimed amount is greater than the 2.93 hours the Court found unpaid) are offset by the double-time wages she was

already paid.[7]  So the Court concludes that Ms. Fulk is due no damages as to these hours under the FLSA.

As the Court concluded above, for the pay period running from October 12 through October 18, 2014, Ms. Fulk was not compensated for 2.2 hours of work time.  During that pay period, she was paid for 40 regular hours and 6 overtime hours.  Therefore, under the FLSA, she should have been paid for 2.2 hours at some rate of overtime.  Ms. Fulk's rights under the FLSA are limited to time and a half, so the Court concludes that she is entitled to be paid for these hours at the time-and-a-half rate of $16.50 per hour.  Therefore, Ms. Fulk is owed **$36.30**.

As the Court concluded above, for the pay period running from December 21 through December 27, 2014, Ms. Fulk was not compensated for .23 hours of work during that week.  During that pay period, she was paid for 32 regular hours, 8 holiday hours, and 2.25 overtime hours.  Therefore, under the FLSA, Ms. Fulk should have been paid at the time-and-a-half rate for those .23 hours.  At this time, Ms. Fulk was being paid $11.25 per hour, so her time-and-a-half rate would be $16.88 per hour.  Therefore, Ms. Fulk is owed **$3.88**.

---

[7] A premium rate offset applies to determining the amount of compensation due as to these hours. 29 U.S.C. § 207(h)(2) provides that "[e]xtra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) shall be creditable toward overtime compensation payable pursuant to this section."  Paragraphs 5 and 6 relate to a premium rate paid for "certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee…or in excess of the employee's normal working hours or regular working hours," or for "work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days."  29 U.S.C. § 207(e)(5), (6); *see also* 29 C.F.R. § 778.201(c) ("Section 7(h) of the [FLSA] specifically states that the extra compensation provided by these three types of [premium] payments may be credited toward overtime compensation due under section 7(a) for work in excess of the applicable maximum hours standard").

Under the FLSA, "liquidated damages are mandatory, unless the trial court determines that the employer, while acting in good faith, reasonably believed that its conduct was consistent with the law." *Jackson v. Go-Tane Servs.,* 56 Fed. Appx. 267, 273 (7th Cir. 2003); *see also* 29 U.S.C. § 260 ("if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 16 of such Act"). An employer seeking to avoid the award of liquidated damages under the FLSA "bears a *substantial burden* in showing that it acted reasonably and with good faith." *Bankston v. Illinois,* 60 F.3d 1249, 1254 (7th Cir. 1995) (emphasis added). And as described above, under the IWPS, "if the court in any such suit determines that the person, firm, corporation, limited liability company, or association that failed to pay the employee as provided in section 1 of this chapter was not acting in good faith, the court shall order, as liquidated damages for the failure to pay wages, that the employee be paid an amount equal to two (2) times the amount of wages due the employee." Ind. Code § 22-2-5-2; *see also Brown,* 87 N.E.3d at 25-27 (applying current version of Ind. Code § 22-2-5-2 retroactively, imposing good-faith standard on claims predating 2015 amendment).

The Court concludes that Metal Technologies did not act in good faith in failing to pay the wages due to Ms. Fulk. As the Court described above, Ms. Conrad could provide no explanation as to why she paid Ms. Fulk for neither her shift time nor the time indicated by her time-clock entries and overtime authorization forms. Absent any explanation as to the discrepancies, the Court simply cannot conclude that Metal Technologies acted in good faith. Therefore, Ms. Fulk is entitled to treble damages for the wage claims raised under both the FLSA and the IWPS.

In the aggregate, Ms. Fulk is owed $42.99 under the FLSA and IWPS for unpaid wages. Trebled, Ms. Fulk is owed **$128.97** in damages for this claim.

### E. Mr. Weil's FLSA and IWCA Wage Claims

Mr. Weil raises claims for unpaid overtime and regular wages under the FLSA and the IWCA. As described above, the FLSA applies only to the nonpayment of overtime wages, which in this case means hours worked over forty hours per week. *See Allen,* 865 F.3d at 938. As the Court concluded in its findings of fact, Mr. Weil was not paid for .07 hours of time worked. Mr. Weil was paid for 12.25 hours during that pay period, so these additional .07 hours do not constitute overtime. Therefore, only the IWCA applies to Mr. Weil's claim.

As described above, the damages provision of the IWPS applies to claims raised under the IWCA. Ind. Code § 22-2-9-4(b) ("The provisions of IC 22-2-5-2 apply to civil actions initiated under this subsection…"). As with Ms. Fulk's claim, and for the same reasons, the Court concludes that Metal Technologies did not act in good faith in failing to pay the wages due to Mr. Weil. Therefore, Mr. Weil is entitled to treble damages for the wage claims raised under both the IWCA. Mr. Weil is owed .07 hours in unpaid wages at the rate of $11.00 per hour, and therefore the Court finds that Mr. Weil is owed $.77 in unpaid wages under the IWCA. Trebled, Mr. Weil is owed **$2.31** in damages for this claim.

### III.
#### CONCLUSION

For the reasons detailed above, the Court concludes that Metal Technologies is liable to the Plaintiff class, Ms. Fulk, and Mr. Weil to the extent indicated by the Court's order. The amount of Metal Technologies' liability to the class and the plaintiffs is as follows:

- The Court awards the Plaintiff class **$93,152.58** in damages arising from the improper deduction of wages for clothing rental taken between January 20, 2013 and April 10, 2016.

- The Court awards the Plaintiff class **$8,102.04** in damages arising from the improper deduction of wages for clothing rental taken from April 11, 2016 forward.

- The Court awards Mr. Weil **$129.30** in damages arising from the improper deduction of wages for clothing rental.

- The Court awards Mr. Weil **$63.00** in damages arising from the improper "OF" deduction.

- The Court awards Ms. Fulk **$128.97** in damages resulting from Metal Technologies' failure to pay wages earned, in violation of the FLSA and IWPS.

- The Court awards Mr. Weil **$2.31** in damages resulting from Metal Technologies' failure to pay wages earned, in violation of the IWCA.

Pursuant to Ind. Code § 22-2-5-2, Fed. R. Civ. P. 23(h), and the FLSA, Plaintiffs' counsel is entitled to an award of reasonable attorney's fees and costs. Ms. Fulk may also be entitled to an incentive award for serving as lead plaintiff for the class. Plaintiffs' counsel is **ORDERED** to file with the Court his petition for attorney's fees and a bill of costs, as well as any request for an incentive award, within fourteen (14) days of the issuance of this order.

Final judgment shall issue after the fees and costs are resolved.

Date: 3/30/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Brian D. Burbrink
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
brian.burbrink@odnss.com

Robert F. Hunt
HUNT HASSLER LORENZ & KONDRAS LLP
hunt@huntlawfirm.net

Todd J. Kaiser
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
todd.kaiser@odnss.com

Robert Peter Kondras, Jr.
HUNT HASSLER KONDRAS & MILLER LLP
kondras@huntlawfirm.net

Jacob H. Miller
HUNT HASSLER LORENZ KONDRAS LLP
jmiller@huntlawfirm.net

Michael W. Padgett
JACKSON LEWIS P.C. - Indianapolis
padgettm@jacksonlewis.com

Melissa K. Taft
JACKSON LEWIS P.C. - Indianapolis
melissa.taft@jacksonlewis.com