UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BRIAN A. WEIL, | ) |
| MELISSA D. FULK, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )      No. 2:15-cv-00016-JMS-MPB |
| | ) |
| METAL TECHNOLOGIES, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

Presently pending before the Court are several motions that constitute the final chapter in this litigation saga. Following a bench trial in this case, Plaintiffs have filed a Motion for Service/Incentive Awards, [Filing No. 396], a Bill of Costs, [Filing No. 397], and a Motion for Attorneys' Fees, [Filing No. 398]. Defendant has also filed a Bill of Costs. [Filing No. 400.] For the reasons described below, the Court grants in part Plaintiffs' Motion for Service/Incentive Awards, grants in part Plaintiffs' Motion for Attorneys' Fees, and concludes that each party shall bear its own costs.

## I.
### BACKGROUND

Plaintiffs filed their initial Complaint in this matter in January 2015 as a putative class and collective action, [Filing No. 1], and filed their operative First Amended Complaint in October 2015, [Filing No. 66]. Plaintiffs raised the following claims against Metal Technologies in that Complaint: (1) class and individual claims for failure to pay minimum and overtime wages in violation of the Fair Labor Standards Act ("FLSA"); (2) class and individual claims for unlawful wage deductions in violation of the FLSA; (3) class and individual claims for unpaid wages and illegally deducted wages (with Ms. Fulk as the class representative) in violation of the Indiana

1

Wage Payment Statute ("IWPS"); (4) class and individual claims for unpaid wages and illegally deducted wages (with Mr. Weil as the class representative) in violation of the Indiana Wage Claims Statute ("IWCA"); and (5) class claims for breach of contract for all individuals in the IWCA plaintiff class.

As to the wage-deduction class claim, Plaintiffs argued that Metal Technologies took improper deductions from employees' paychecks for the cost of renting uniforms. [Filing No. 66 at 1-2.] And as to Mr. Weil, Plaintiffs alleged that Metal Technologies took improper wage deductions for uniform rental and an improper one-time wage deduction labeled as "OF." Regarding the unpaid wages, Plaintiffs claimed that Metal Technologies improperly rounded employees' time-clock entries in order to eliminate time worked prior to and after scheduled shifts. [Filing No. 66 at 5-6.] Plaintiffs also claimed that Metal Technologies automatically deducted 30-minute meal breaks, even if employees took breaks shorter than 30 minutes or did not take a meal break at all. [Filing No. 66 at 6.]

Plaintiffs filed a Motion to Certify a Class/Collective Action on September 1, 2015, [Filing No. 53], and that motion was granted in part and denied in part on January 25, 2016, [Filing No. 79]. The Court ruled as follows on that certification motion:

- The Court conditionally certified an FLSA collective action sub-class of present and former Metal Technologies employees who worked at any time from January 20, 2012 to the present and who were not timely paid regular wages or overtime compensation on one or more occasion for time worked. [Filing No. 79 at 11-13.]

- The Court denied collective action certification to an FLSA sub-class of plaintiffs who were not timely paid regular wages or overtime compensation on one or more occasions for time worked, because the employee took a lunch break of twenty minutes or less. [Filing No. 79 at 33.]

- The Court denied collective action certification to an FLSA sub-class of plaintiffs challenging wage deductions for uniforms as being kickbacks. [Filing No. 79 at 33.]

- The Court denied class certification to a sub-class of involuntarily terminated plaintiffs raising state-law breach-of-contract claims for unpaid wages under all theories.  [Filing No. 79 at 33.]

- The Court denied class certification to an IWPS sub-class of plaintiffs who were not timely paid regular wages on one or more occasions for time worked, because the employee took a lunch break of 20 minutes or less.  [Filing No. 79 at 33.]

- The Court certified an IWPS sub-class of plaintiffs who presently worked at Metal Technologies or who voluntarily terminated their employment, who worked at any time from January 20, 2013 to the present, and who were not timely paid regular wages on one or more occasions for time worked.  [Filing No. 79 at 34.]

- The Court certified an IWPS sub-class of plaintiffs who presently worked at Metal Technologies or voluntarily terminated their employment, who worked at any time from January 20, 2013 to the present, and who were not timely paid regular wages on one or more occasions based upon wage deductions taken by Metal Technologies to cover costs for work uniforms.  [Filing No. 79 at 34.]

The parties then proceeded to provide notice to potential class and collective action members and conducted discovery.  In their Statement of Claims, Plaintiffs identified the following claims as being at issue:

- FLSA claims as to the plaintiff class, Mr. Weil, and Ms. Fulk for unpaid overtime wages;

- Class claims and Ms. Fulk's individual claims under the IWPS for unpaid wages and illegal deductions;

- Ms. Fulk's individual claim under the IWPS for late payment of wages; and

- Mr. Weil's individual IWCA claims for unpaid wages and illegal deductions.[1]

[Filing No. 316.]

On November 1, 2016, Plaintiffs moved for partial summary judgment, [Filing No. 321], seeking judgment as a matter of law on the following claims:

---

[1] The Court notes that following the denial of class certification, Plaintiffs abandoned their FLSA kickback claims and their breach-of-contract claims.

- Liability as to the class claim for uniform-rental wage deductions under the IWPS; and

- Liability as to the class claim for time-rounding under the FLSA and IWPS.[2]

[Filing No. 322.] Metal Technologies filed a Cross-Motion for Partial Summary Judgment, largely opposing Plaintiffs' Motion and seeking partial summary judgment on several claims and damages issues. [Filing No. 330.] In its briefing, Metal Technologies:

- conceded liability as to uniform deductions taken from the plaintiff class from January 20, 2013 through April 10, 2016;

- moved for summary judgment as to pre-shift time-rounding claims for several FLSA collective action members;

- sought a determination that Plaintiffs could not seek an overtime rate in damages under the IWPS; and

- sought a determination that Plaintiffs' wage-analysis calculations under the IWPS were inaccurate.

[Filing No. 331.] A few days after filing its Cross-Motion for Partial Summary Judgment, Metal Technologies also filed a Motion to Decertify the sub-classes related to Plaintiffs' time-rounding claims under the FLSA and IWPS. [Filing No. 332.]

On May 26, 2017, the Court issued an Order addressing both the Cross-Motions for Summary Judgment and the Motion for Decertification. [Filing No. 363.] The Court resolved those motions as follows:

- The Court granted Plaintiffs' Motion for Summary judgment as to liability on the (conceded) uniform wage-deduction claim under the IWPS brought by the plaintiff class, but only as to the period from January 20, 2013 through April 10, 2016. The Court denied Plaintiffs' Motion for Summary Judgment as to the remainder of the uniform-deduction class claim.

---

[2] In their reply brief, Plaintiffs clarified that this claim included only meal breaks of 21 minutes or more that were "rounded up" to 30. [Filing No. 341 at 32-33.] Following the Court's denial of certification of the class involving unpaid meal breaks lasting less than 20 minutes, Plaintiffs filed a separate lawsuit to address those claims on a class-wide basis.

- The Court denied Plaintiffs' Motion for Summary Judgment as to liability on Plaintiffs' time-rounding claims under the FLSA and IWPS.

- The Court granted Metal Technologies' Motion to Decertify the time-rounding classes.

- The Court denied as moot Metal Technologies' Motion for Partial Summary Judgment, in light of the decertification.

[Filing No. 363 at 29.]

Prior to trial, the parties filed stipulations as to the uniform wage-deduction damages incurred by the plaintiff class, including both those incurred from January 20, 2013 through April 10, 2016, for which liability had already been determined, and for those damages that accrued after April 10, 2016, in the event that the Court found Metal Technologies liable. [Filing No. 380.] Remaining for resolution at trial were the following issues:

- The amount of damages as to the IWPS class claim for wage deductions taken for uniform rental between January 20, 2013 and April 10, 2016 (taking into account the parties' stipulation);

- Liability as to the IWPS class claim for wage deductions taken for uniform rental between April 11, 2016 and the present and any resulting damages (taking into account the parties' stipulation);

- Ms. Fulk's individual claim for unpaid wages resulting from unpaid meal breaks under the FLSA and IWPS, and any resulting damages;[3]

- Ms. Fulk's individual claim for unpaid wages resulting from the rounding of pre- and post-shift time under the FLSA and IWPS, and any resulting damages;

- Mr. Weil's individual claim for unpaid wages resulting from unpaid meal breaks under the FLSA and IWCA, and any resulting damages;

- Mr. Weil's individual claim for unpaid wages resulting from the rounding of pre- and post-shift time under the FLSA and IWCA, and any resulting damages;

- Mr. Weil's individual claim as to wage deductions for uniform rental under the IWCA, and any resulting damages; and

---

[3] Due to the Court's decertification of the time-rounding claims, these claims included all unpaid meal breaks, from 0-29 minutes.

- Mr. Weil's individual claim as to the one-time "OF" wage deduction under the IWCA, and any resulting damages.

Following a January 30, 2018 bench trial, the Court issued its Findings of Fact and Conclusions of Law.  [Filing No. 395 at 1.]  As to the plaintiff class's uniform deductions taken between January 20, 2013 and April 10, 2016, the Court concluded that the deductions amounted to $31,050.85, which, trebled, amounted to $93,152.58 in damages.  At trial, Metal Technologies conceded liability as to Mr. Weil's uniform deduction claim, and the parties stipulated that a total of $43.10 had been deducted.  Trebled, that amounted to $129.30 in damages.  As to uniform wage deductions taken from April 11, 2016 forward, the Court found in favor of the plaintiff class in the amount of $8,102.04.  And the Court found in favor of Mr. Weil on the "OF" deduction claim in the amount of $63.00, which the Court declined to treble based on recent developments in Indiana law.

As to the time-rounding claims raised individually by Ms. Fulk and Mr. Weil regarding pre- and post-shift and meal-break clock-ins, the Court concluded that the Plaintiffs did not establish by a preponderance of the evidence that they were performing work during those periods, or that if they were, that Metal Technologies should have known about it.  The Court did conclude, however, that Ms. Fulk and Mr. Weil had some unpaid work time.  This unpaid time occurred specifically when the Plaintiffs were clocked in during periods that did not correspond to regular shift hours, and where their time records reflect that they were not compensated based on scheduled "shift time," as was Metal Technologies' common practice.  Ms. Fulk's unpaid wages amounted to $42.99 under the FLSA and IWPS, which, trebled, amounted to $128.97 in damages.  Mr. Weil's unpaid wages amounted to $.77 under the IWCA, which, trebled, amounted to $2.31 in damages. So, in total, the Court awarded the following damages:

- **$93,152.58 (stipulated)** to the plaintiff class, arising from the improper deduction of wages for clothing rental taken between January 20, 2013 and April 10, 2016;

- **$8,102.04 (stipulated)** to the plaintiff class, arising from the improper deduction of wages for clothing rental taken from April 11, 2016 onward;

- **$129.30** to Mr. Weil, arising from the improper deduction of wages for clothing rental;

- **$63.00** to Mr. Weil, arising from the improper "OF" deduction;

- **$128.97** to Ms. Fulk, resulting from Metal Technologies' failure to pay wages earned, in violation of the FLSA and IWPS;

- **$2.31** to Mr. Weil, resulting from Metal Technologies' failure to pay wages earned, in violation of the IWCA.

Presently pending before the Court are several motions related to fees and costs arising from the resolution of these claims. Those motions are ripe for the Court's review, and it addresses each in turn.

## II.
### PLAINTIFFS' MOTION FOR INCENTIVE/SERVICE AWARDS

Plaintiffs move the Court for an order providing incentive/service awards to several plaintiffs involved in the class-action uniform deduction claim litigation, as follows:

- Brian Weil: $7,500

- Melissa Fulk: $7,500

- Shadric Jones, Fannie Kolish, Kevin Graves, Janelle Myers: $1,000 each

[Filing No. 396 at 1-2.]

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). The Court may consider a number of relevant factors in determining whether such an award is warranted, including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions,

and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.*  These incentive amounts are distributed from the overall damages awarded to the plaintiff class, thereby diminishing the damages recovered by the "non-incentivized" plaintiffs.

Here, Plaintiffs seek awards for both the named plaintiff, Ms. Fulk, and several non-named plaintiffs.  The Court reiterates that, following its decertification order, the only class claim that proceeded in this case was the claim involving wage deductions for uniform rental.  That claim was resolved in several stages: first, Metal Technologies conceded at summary judgment its liability for deductions taken from January 2013 through April 10, 2016; next, at trial, the Court entered judgment as to the amount of damages on that claim, and as to liability and damages regarding the post-April 10 period.

In support of an incentive award for Ms. Fulk, Class Counsel attests that "[t]his class action would not have been certified without Ms. Fulk."  [Filing No. 396-1 at 2.]  He attests that Ms. Fulk participated in this litigation for over three years, communicated with Class Counsel and staff on a regular basis, helped identify potential witnesses, has been deposed, and has attended at least two in-person settlement conferences.  [Filing No. 396-1 at 2-3.]  Class Counsel does not specify whether a financial incentive was necessary to induce Ms. Fulk to participate in the litigation, but the Court credits Class Counsel's description of Ms. Fulk's active participation and time expended in assisting with the litigation.

The Court notes, however, that Ms. Fulk's personal knowledge or experience as to the uniform deduction claims were essentially exhausted (at the latest) following the Court's determination of liability as to the pre-April 10 period and the parties' stipulations as to those damages.  The issues disputed at trial involved the post-April 10 deductions, and Kirbie Conrad gave the relevant testimony as to that issue.  So while the Court does not doubt that Ms. Fulk

assisted Class Counsel in preparations for trial, her efforts could only have related to the other, non-class claims she was pursuing.

Because of the time and efforts Ms. Fulk expended on this litigation, the Court is satisfied that under the factors identified above, an incentive award would be appropriate. However, the award requested by Class Counsel amounts to just over eight percent of the overall recovery that was awarded to the class. Class Counsel has provided no additional justification for an award that high, and the Court is mindful that the amount it grants will ultimately reduce the recovery received by the other plaintiffs. Therefore, the Court determines that an award of $2,500 is appropriate, given the specific tasks that Class Counsel attests were performed by Ms. Fulk.

The Court concludes that an incentive award would not be appropriate for Mr. Weil. Quite simply, Mr. Weil is not a plaintiff in the uniform deduction class: his employment was involuntarily terminated, and the class only included those individuals who were employed by Metal Technologies or who voluntarily terminated their employment. While Mr. Weil may have sought out and hired Class Counsel, which ultimately benefited the class, he was not part of it. Mr. Weil separately raised and was successful on his own uniform deduction claim. Class Counsel refers to Mr. Weil as one of the two lead plaintiffs in this class action, but that description is not accurate. Mr. Weil was a lead plaintiff, but only as to claims that were ultimately decertified, and never as to this claim.

In support of an award for non-named plaintiffs Shadric Jones, Fannie Kolish, Kevin Graves, and Janelle Myers, Class Counsel attests that they attended depositions and communicated with Class Counsel in preparation for those depositions. Plaintiffs cite the approved settlement agreement in *Knox v. Jones Group*, 2017 WL 3834929 (S.D. Ind. 2017), as support for the proposition that service awards are appropriate for non-named plaintiffs. The Court must point

out, however, that settlement agreements present an entirely different procedural posture than the current case.  In *Knox*, for example, the Court concluded that the settlement constituted a "fairly and honestly negotiated" agreement, developed following vigorous litigation.  Here, however, the amount of damages was determined by a judgment of this Court.  Further, while cited for the proposition that non-named plaintiffs could receive services awards, the cases cited in *Knox* all involved *named* plaintiffs requesting incentive or service awards.  *See Knox*, 2017 WL 3834929, at *3.  Also, the *Knox* context involved settlement approval, which included notice to the class and an opportunity to object.  That is not the case here.   Absent some other authority justifying reducing other class members' recovery in favor these plaintiffs, the Court determines that service awards are not appropriate here.[4]  Indeed, at a post-trial status conference, the Court requested that class counsel provide authority for recovery of incentive fees by class members who were not class representatives, and none has been provided.

Accordingly, the Court **GRANTS** Plaintiffs' motion for incentive/services awards, [Filing No. 396], to the extent that it grants Ms. Fulk an incentive award in the amount of $2,500. The Motion is in all other respects **DENIED**.

### III.
### PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

Plaintiffs contend that they are the prevailing parties in this litigation, and they move for an award of their reasonable attorneys' fees, pursuant to 29 U.S.C. § 216(b), Ind. Code § 22-2-5-2, and Ind. Code § 22-2-9-4(b).  [Filing No. 399 at 1.] Plaintiffs have submitted the lodestar figure for Class Counsel's fees—the hourly rates for each attorney and paralegal multiplied by the hours of work expended—and they argue that this figure represents the reasonable fee in this case.

---

[4] Moreover, the Court is mindful that Ms. Kolish was hardly a model named plaintiff in her related case, with which this case was consolidated for discovery purposes.

[Filing No. 399 at 1.]  Plaintiffs claim that their counsel and paralegal expended 1,922.85 total hours on this case, amounting to $661,530.50 in attorneys' fees.  [Filing No. 399 at 5.]  Plaintiffs request this entire amount.  [Filing No. 398.]

In response, Metal Technologies argues that in determining the amount of a reasonable fee in this case, the Court should consider the overall degree of success that Plaintiffs achieved in the litigation.  [Filing No. 411 at 1.]  Metal Technologies contends that Plaintiffs actually only prevailed on a small percentage of their overall claims and damages, and that their lodestar should therefore be commensurately reduced.  [Filing No. 411 at 2-3.]  Metal Technologies also argues that, as to the claims arising under Indiana law, an award of attorneys' fees is limited to those fees that are attributable to the successful claims only.  [Filing No. 411 at 17.]  Therefore, Plaintiffs' submissions in support of the fee award must allow the Court to distinguish between the time spent on state versus federal claims, and according to Metal Technologies, Plaintiffs have failed to do so here.  [Filing No. 411 at 18.]

In reply, Plaintiffs dispute Metal Technologies' contention that the Court is required to parse out what recovery is attributable to each statute.  [Filing No. 413 at 7.]  Plaintiffs describe their state law claims as "complementary" and "derivative" of their FLSA claims, and argue that the Court "should not divide the attorney hours expended on a claim by claim basis."  [Filing No. 413 at 10.]  Plaintiffs reiterate their request for the entire lodestar amount.

 The Court notes at the outset that the vast majority of Plaintiffs' recovery is being granted under the authority of state law, and not pursuant to the federal claims raised by Plaintiffs under the FLSA.  Ind. Code § 22-2-5 (which applies to all of Plaintiffs' state-law claims, as to fees) makes an award of some fees to a prevailing plaintiff mandatory, stating that the "court shall order as costs in the case a reasonable fee for the plaintiff's attorney."  Ind. Code § 22-2-5-2.  This differs

from the applicable federal scheme, in which a court may deny an award of fees altogether when the prevailing party's victory was "Pyrrhic," nominal, technical, or *de minimis*. *See, e.g., Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 592 (7th Cir. 2000). Moreover, attorneys' fees under the Indiana statute are limited "to those fees attributable to [the plaintiff's] *recovery* for unpaid wages." *Prime Mortg. USA, Inc. v. Nichols*, 885 N.E.2d 628, 661 (Ind. Ct. App. 2008) (emphasis added). And when successful claims and unsuccessful claims are based on different facts and legal theories, the work on the unsuccessful claims should be excluded. *See Jackson v. ArvinMeritor, Inc.*, 2009 WL 1941335, at *2 (S.D. Ind. 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).

Ultimately, both standards allow a court to consider the degree of success achieved and the proportionality of recovery in determining a reasonable fee. Under the state-law standard, "in determining a reasonable amount of attorney's fees, consideration should be given to the nature and difficulty of the litigation; the time, skill, and effort involved; the fee customarily charged for similar legal services; the amount involved; the time limitations imposed by the circumstances; and the result achieved in the litigation." *R.L. Turner Corp. v. Wressell*, 44 N.E.3d 26, 39 (Ind. Ct. App. 2015). Under the federal standard, after the Court calculates the lodestar, "it may be appropriate to adjust [that lodestar] further. While a plaintiff who achieves excellent results should receive the entire lodestar, that sum may be excessive for one who has achieved only partial or limited success." *Sommerfield v. City of Chicago*, 863 F.3d 645, 650 (7th Cir. 2017) (internal citation and quotation omitted).

Defendants do not dispute the rate charged, the number of hours expended, or the staffing choices made by Class Counsel, and the Court has no reason to doubt the accuracy of Class Counsel's submissions. But, put simply, Plaintiffs request attorneys' fees that are approximately

six times greater than the recovery achieved in this case, and as the Court describes below, an award of the entire $661,530.50 lodestar amount does not constitute a reasonable fee.  Such an award would be excessive in light of both the limited success of Plaintiffs' claims and the amount of their recovery.

Plaintiffs' success, however, was not evenly distributed among the claims raised.  Their claims fall into two categories: (1) wage-deduction claims and (2) time-rounding claims.  While both involve unpaid wages, these categories of claims were based on different factual allegations and partially diverging statutes.  In light of the state-law requirement that fees be apportioned as attributable to the recovery achieved on Plaintiffs' claims, the Court concludes that it should evaluate Plaintiffs' lodestar, and the appropriate fee, as to each category of claim.

Regarding the wage deduction claims, Plaintiffs were almost entirely successful.  Indeed, Plaintiffs' only unsuccessful claim in this category was the early-abandoned FLSA kickback theory, which undoubtedly represented a small fraction of the overall litigation time expended on wage deductions.  The plaintiff class was awarded $101,254.62 arising from improper wage deductions for uniform rental.  Mr. Weil was awarded $129.30 in damages arising from improper wage deductions for uniform rental, and $63.00 for the improper "OF" deduction.  In light of this success, the Court concludes that Plaintiffs should receive the entire lodestar amount that can be attributed to the wage-deduction claims.

Regarding the time-rounding claims, by any possible measure, Plaintiffs were almost entirely unsuccessful.  Plaintiffs describe themselves as having "prevailed" on these claims, but that description masks the chasm between the original claims, those that moved forward to trial, and the judgment obtained.  The time-rounding claims started as class and collective actions, in which Plaintiffs initially estimated that between 500 and 550 hourly employees might participate,

[Filing No. 54 at 10; Filing No. 54 at 25], and in which 275 members ultimately did, [Filing No. 411].  In a settlement demand dated August 23, 2016, Plaintiffs provided several possible damage estimates, identifying Plaintiffs' "best" and "worst" case scenarios.  [Filing No. 411.]  As to the time-rounding claims (including unpaid meal breaks), the damages sought by the plaintiff classes ranged from approximately $1.0 million to $1.4 million.  [Filing No. 411-1.]  The time-rounding classes were decertified, however, and by the time the case reached trial, only Ms. Weil and Mr. Fulk's individual claims remained.  At trial, Ms. Fulk claimed $2,125.57 in damages, and Mr. Weil claimed $52.14 in damages due to time-rounding.  [Filing No. 383 at 5-8.]  Ms. Fulk received $128.97 in damages, and Mr. Weil received $2.31 in damages.

No matter what starting point the Court uses for its determination of "success" as to the time-rounding claims, that success can only be described as minimal.  Indeed, this is the type of judgment that, under the federal standard, could result in the award of no fees at all.  *See, e.g.,* *Perlman v. Zell*, 185 F.3d 850, 859 (7th Cir. 1999) ("We have held in a series of recent cases that a litigant who wins less than 10% of his initial demand either is not a prevailing party for purposes of fee-shifting statutes or should be treated *as if* he had not prevailed.  Recovery of less than 10% of the claim shows that, even making allowances for puffing in the complaint, the defendant has won on the bulk of the seriously disputed items.") (internal citations omitted).  Plaintiffs' lodestar as to these claims should therefore be reduced accordingly.

The Court pauses here to note that despite the vast difference between the amounts originally sought by Plaintiffs and the actual recovery, and despite the massive impact that decertification had on this case, in its brief in support of its motion for attorneys' fees, Class Counsel insisted on an award of all fees in this case.  Class Counsel did so in spite of the plethora of cases addressing the reduction of a lodestar amount in light of the relative success achieved.

Based on its familiarity with the history of the case and the results achieved by Plaintiffs, the Court ordered Plaintiffs to provide a breakdown of the attorneys' fees requested, correlating the time worked to the specific claim to which that work related.  The Court specified that if Class Counsel's time records did not allow him to categorize the time entries in a sufficiently detailed manner, Counsel was to provide the Court with an estimate as to what percentage of the hours requested relate to each of the claims raised by Plaintiffs, the collective action class, and the FRCP 23 class. [Filing No. 402.]

Plaintiffs filed the requested supplemental information in the form of itemized billing records and an affidavit by Class Counsel.  [Filing No. 403.]  Class Counsel was able to categorize only a minority of the time entries as relating exclusively to either the time-rounding claims or the wage deduction claims.  Despite the Court forecasting to Class Counsel the importance of the breakdown of fees by percentage, Class Counsel largely did not provide the Court with the requested information.  In his affidavit, Class Counsel represented that "the percentages of work 'related to' or even 'necessary' to prevail on the different theories and claims will overlap significantly.  There could not be a calculation where the percentages added up only to 100%." [Filing No. 403 at 11.]  Class Counsel estimated that 80 percent of the work performed in this case "would have been necessary to take this litigation through trial and to this point in the litigation…" [Filing No. 403 at 12.]  Throughout his affidavit, Class Counsel essentially argues that it is simply impossible to accurately parse out what work relates to each claim, because the claims so significantly overlap.

The Court is sensitive to the difficulties that exist in parsing out time spent on individual claims raised in the same lawsuit.  But, of course, it is also the case that "[t]he party requesting an assessment of attorney fees bears the burden of proving an appropriate allocation of fees between

issues for which attorney fees may be assessed and those for which they may not…While a perfect breakdown is neither realistic nor expected, a reasonable, good faith effort is anticipated." *Prime Mortg.*, 885 N.E.2d at 661.  And the Seventh Circuit has counseled that when it is impossible to separate "time spent on winning and losing claims, there is nothing to do but make an across-the-board reduction that seems appropriate in light of the ratio between winning and losing claims." *Sommerfield*, 863 F.3d at 652.  None of this case law post-dates this matter, and it should have been clear to Class Counsel, at least by summary judgment, that the wage deduction and time-rounding claims were fundamentally differently situated.  The wage deduction claims were largely conceded by that point, and the damages were clear, if not already largely stipulated.  The time-rounding claims, on the other hand, had been decertified, and Plaintiffs' key legal theory— that the timecards themselves could support recovery without evidence that the timecards reflected hours actually worked—had been rejected by the Court.  Class Counsel failed to keep detailed records, and failed to provide this Court with an estimate as to the different claims, at his own peril.

Absent a clear breakdown from Plaintiffs, the Court must, in its discretion, fashion the appropriate allocation.  The Court does not share Plaintiffs' view that the wage deduction and time-rounding claims were highly overlapping in nature.  Procedurally, those claims significantly diverged, at the latest, at summary judgment, where Metal Technologies conceded liability for the majority of the wage-deduction class claims.  And even as to the claims that went to trial, Metal Technologies stipulated as to the amount of damages.  Factually as well, the claims were different: while both the wage deduction and time-rounding claims involved unpaid wages, in all other respects, the facts underlying the claims were distinct.  Indeed, the facts underlying the uniform deduction claims were never genuinely disputed—the parties disagreed as to the impact of the

applicable law to those facts. *See Sommerfield*, 863 F.3d at 652 ("[Plaintiff] fares no better in arguing that [Counsel's] work on the unsuccessful claims should be compensated because they were inextricably linked to his successful claims. The assumption of such a tight link is questionable, at best.").

Considering the course of this litigation as a whole, the Court concludes that 15 percent of Class Counsel's time was spent litigating wage-deduction issues, and 85 percent was devoted to time-rounding issues. This estimate takes into account the nature and difficulty of the issues involved: many aspects of the wage-deduction claims were uncontested; the nature of the uniform-deduction violation was technical and fairly straightforward for an experienced litigator, as Class Counsel is; and the damages were stipulated. Some of the claims, however, proceeded to trial and post-trial briefing, and therefore required time and attention throughout the course of the litigation. The Court concludes that this distribution accounts for all of those factors.

The Court above concluded that Plaintiffs are entitled to the entire lodestar as to the portion of fees properly allocated to the wage deduction claims. Having also concluded that 15 percent of the fees relate to Plaintiffs' wage-deduction claims, the Court determines that Plaintiffs are entitled to an award of $99,229.58 as to those claims, which represents 15 percent of the $661,530.50 in requested fees.

As to the remaining 85 percent of the lodestar attributable to the time-rounding claims, the Court has already concluded that Plaintiffs were almost entirely unsuccessful. As such, it must determine to what degree the lodestar should be reduced. The Court must point out that although Plaintiffs presented the time-clock based claims as "rounding" issues, to the extent that Plaintiffs prevailed in proving unpaid wages, they did not do so based on proof that any rounding occurred.

In fact, the Court did not find any rounding here at all.  Instead, it found wages for blocks of time that were simply unpaid for unexplained reasons.

Through summary judgment, Plaintiffs pursued this case forcefully as a rounding case, and presented the time-rounding class claims as essentially conceded by Metal Technologies.  They argued that, under their reading of the FLSA and related regulations, time clock records automatically constitute records of work actually performed.  [Filing No. 341 at 18 ("time clock records are records of work.  This is true under the law.").]  The Court in no uncertain terms rejected that legal contention, pointing out that Plaintiffs only persisted in pressing that legal theory by ignoring an applicable regulation, which allows for employers to disregard early and late time-clock punches when employees are not engaged in work.  [Filing No. 363 at 12-13 (citing 29 C.F.R. § 785.48(a)).]

Both at summary judgment and here in their fee motion, Plaintiffs have compared this case to *Schneider et al. v. Union Hospital, Inc.,* Case No. 2:15-cv-00204-JMS-DKL.  That case differs, however, in a key respect, and in the same respect that influenced the Court's decertification order in this case: the *Schneider* plaintiffs attested from an early stage in the litigation that they punched in at the beginning of their shifts and immediately started working.  Plaintiffs in this case failed to submit any similar evidence at summary judgment, and indeed, Metal Technologies presented evidence that many employees *did not* perform work during pre- and post-shift clock-ins.  As a result, and based on Plaintiffs' steadfast adherence to the theory that time-clock entries automatically constitute hours worked, the parties here sunk considerable time and resources to litigating the ultimately decertified class claims that had previously comprised the bulk of this litigation.  After decertification, the Plaintiffs' rounding claims moved forward as small individual actions.  Of course, this differs significantly from *Schneider* in that the plaintiffs in that case

succeeded on their class claims following certification, to the extent that they accepted a class-based settlement agreement that vindicated their interests.

By the starkest measure, using the settlement demand as a starting point, Plaintiffs' combined $131.28 recovery represents *significantly* less than one percent of $1.0 to $1.4 million in damages sought on the time-rounding claims.  At trial, Plaintiffs sought a combined $2,177.71 in damages and received $131.28.  [Filing No. 383 at 5-8; Filing No. 395.]  That amount represents approximately six percent of the relief sought at trial.  By the time that the Court issued its summary judgment and decertification order, Class Counsel had already accrued over $480,000 in fees; and at that pivotal moment in the litigation, Plaintiffs were on notice that their potential recovery on the time-rounding claims was minimal *and* that their primary theory of liability (the contention that time records automatically constitute a record of hours worked) had been rejected by the Court.

Again, the Court stresses that Class Counsel's submissions leave the Court with no other means to determine an appropriate award, and therefore "there is nothing to do but make an across-the-board reduction that seems appropriate in light of the ratio between winning and losing claims." *Sommerfield*, 863 F.3d at 652.  The Court concludes that the appropriate measure of success is somewhere in between the less-than-one-percent metric and the six percent recovery achieved at trial.  The bulk of litigation expenses were accrued while the case was still primarily a class action, where litigation costs are often higher and procedures more onerous.  The vast majority of Plaintiffs' class claims were decertified, and the Court finds it inappropriate to balloon Plaintiffs' fee award for class claims that were ultimately unsuccessful. In light of the decertification and Plaintiffs' minimal recovery, the Court determines that Plaintiffs were three

percent successful on their time-rounding claims.  Therefore, a 97 percent reduction in attorneys'

fees as to the time-rounding claims is appropriate.

While Class Counsel cites a number of cases to support an award of attorneys' fees that are

six or more times greater than the amount of recovery, the Court finds a different case to be most

closely analogous to the circumstances here.  In *Coan v. Nightingale Home Healthcare*, 2006 WL

8409666, at *1 (S.D. Ind. 2006), six individual plaintiffs went to trial from a group that originally

included fifteen.  Only one plaintiff won a jury verdict in her favor, in the amount of $1,172.50.

*Id.*  That award constituted less than four percent of the unpaid overtime wages she sought.  The

Court concluded that, "[i]n light of these facts, plaintiffs' request for $89,205.00 in attorney fees

and $6,727.95 in costs is not reasonable. It is simply absurd."  *Id.*  The *Coan* court noted that while

the plaintiffs correctly cited *Hensley* for the proposition that the lodestar is the starting point in

determining a reasonable fee, their motion "ignores what the Supreme Court actually decided

in *Hensley:* that the district court had erred by failing to *reduce* the lodestar amount to account for

the prevailing plaintiff's limited success."  *Id.* (citing *Hensley,* 461 U.S. at 434-40).

As to the time-rounding claims, 85 percent of the $661,530.50 in requested fees amounts

to $562,300.93.  Three percent of that amount is $16,869.03.

Combined with the $99,229.58 awarded for attorneys' fees related to the wage-deduction

claims, the Court awards Plaintiffs $116,098.61 as a reasonable attorneys' fee.

## IV.
### BILLS OF COSTS

Under Federal Rule of Civil Procedure 54(d), the Court has discretion to tax the costs

enumerated in 28 U.S.C. § 1920 against the losing party in an action, and a "strong presumption"

exists that the Court will do so.  *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir.

1997) (citation omitted).  The losing party "bears the burden of an affirmative showing that the

taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005). "The process for awarding court costs is intended to be summary." *Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 541 F.3d 719, 727 (7th Cir. 2008).

Both Plaintiffs and Metal Technologies have filed bills of costs. [Filing No. 397; Filing No. 400.] Metal Technologies' arguments as to costs essentially mirror those regarding attorneys' fees: it argues that Plaintiffs' recovery was nominal relative to what was sought, and that therefore Metal Technologies' fees are recoverable as a "mixed result" case. [Filing No. 412 at 3.] Plaintiffs opposed Defendants' Bill of Costs, arguing that this is not a "mixed result" case, and arguing that they are entitled to tax their costs to Metal Technologies. [Filing No. 414 at 7.]

In *Gavoni v. Dobbs House, Inc.*, the Seventh Circuit explained that "courts have especially broad discretion to award or deny costs in mixed result cases, including cases in which liability was established but recovery was nominal relative to what was sought." 164 F.3d 1071, 1075 (7th Cir. 1999) (internal citations omitted). In that case, the jury awarded plaintiffs less than one percent of what they requested, and the Court concluded that under this "mixed result," the trial court's denial of costs did not constitute an abuse of discretion. *Id; see also Testa v. Village of Mundelein, Ill.,* 89 F.3d 443, 447 (7th Cir. 1996) (finding no abuse of discretion where trial court ordered each party to bear its own costs in "mixed outcome" case where plaintiff won a jury verdict on his malicious prosecution claim and lost on his unlawful arrest claim).

Plaintiffs acknowledge *Gavoni* and *Testa*, but conclusorily state that while Metal Technologies argues this is a "mixed result" case, "[i]t is no such thing." [Filing No. 414 at 7.] The Court disagrees. This case is analogous to *Gavoni* and *Testa*—as the Court described at length above, Plaintiffs were successful on only a small portion of their claims. This is certainly a "mixed result" case, and the Court exercises its discretion to deny both parties' petitions for costs in this

instance.  The parties' petitions for costs are therefore **DENIED**, and each party shall bear its own costs.

**V.**

**CONCLUSION**

For the reasons described above, the Court:

- **GRANTS** Plaintiffs' Motion for Incentive/Service Awards, [396], to the extent that it grants Ms. Fulk an incentive award in the amount of $2,500. The Motion is in all other respects **DENIED**;

- **GRANTS IN PART** Plaintiffs' Motion for Attorneys' Fees and **AWARDS** Plaintiffs $116,098.61 as a reasonable attorneys' fee, [398]; and

- **DENIES** the parties' petitions for costs, [397; 400].  Each party shall bear its own costs.

Final Judgment shall issue by separate order.


Date: 6/13/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Robert F. Hunt
HUNT HASSLER LORENZ & KONDRAS LLP
hunt@huntlawfirm.net

Robert Peter Kondras, Jr.
HUNT HASSLER KONDRAS & MILLER LLP
kondras@huntlawfirm.net

Jacob H. Miller
HUNT HASSLER LORENZ KONDRAS LLP
jmiller@huntlawfirm.net

Michael W. Padgett
JACKSON LEWIS P.C. - Indianapolis
padgettm@jacksonlewis.com

Melissa K. Taft
JACKSON LEWIS PC (Indianapolis)
melissa.taft@jacksonlewis.com